[Sac. No. 1415.   Department One.—May 7, 1907.]

## A. K. ROBINSON, Appellant, v. WILLIAM MUIR et al., Respondents.

MINER'S LIEN—FORECLOSURE—OWNER NOT MADE PARTY—JUDGMENT.— The interest of an owner in a mining claim, who is not made a party in an action to foreclose miners' liens thereon, is not affected by the judgment in such action or by a sale had thereunder.

ID.—DEFENDANT IN WHOSE FAVOR JUDGMENT IS RENDERED.—The interest of an owner in a mining claim, who is made a party defendant in an action to foreclose miners' liens thereon, but in whose favor judgment was rendered, is not affected by a judgment of foreclosure rendered against other defendants.

ID.—GRANTEE UNDER UNRECORDED DEED—BONA FIDE PURCHASER—LIENORS HAVING KNOWLEDGE OF DEED.—Where the claimants of miners' liens brought suit for the foreclosure thereof with full knowledge that one of the defendants, in whose favor judgment was rendered, was a prior grantee of the property sought to be foreclosed under an unrecorded deed, neither they nor a purchaser of the property at the execution sale in their behalf are *bona fide* purchasers for value as against such grantee.

CORPORATION—SALE OF PROPERTY TO STOCKHOLDER.—Section 309 of the Civil Code does not prohibit the sale by a corporation, for an adequate consideration, of property owned by it, and such sale may be to a stockholder as well as to a third person.

QUIETING TITLE—EVIDENCE.—In an action to quiet title, alleged error in the admission of a certain judgment-roll in evidence will not be considered if the roll is not incorporated in the record.

ID.—ACTION BY HOLDER OF EQUITABLE TITLE.—An action to quiet title cannot be maintained by the owner of an equitable title against the owner of the legal title. And, similarly, in such action by the owner of the legal title, where the defense consists merely of a denial of plaintiff's ownership and the assertion of title in defendant, such defense is not established by proof that the plaintiff is the owner of the legal title, subject to an equity in favor of defendant.

ID.—EQUITABLE DEFENSES AGAINST LEGAL TITLE—FINDINGS.—In such an action by the owner of the legal title, where equitable defenses are interposed by the defendants, in order to sustain a judgment in their favor such defenses must be the subject of favorable findings by the court.

FINDINGS—IMMATERIAL ISSUES.—If findings actually made which are sufficient to support the judgment are sustained by the evidence, the failure to find upon additional issues which could not affect the result is immaterial.

APPEAL—NEW TRIAL—ORDER REVERSED IN PART.—On an appeal from an order denying a new trial, in an action to quiet title to several pieces of property with respect to which the issues are entirely separate, and as to which the new trial was properly denied as to some and erroneously as to others, the order should be reversed and a new trial granted only so far as may be necessary to correct the error in the order.

APPEAL from an order of the Superior Court of Placer County refusing a new trial. E. E. Gaddis, Judge presiding.

The facts are stated in the opinion of the court.

A. K. Robinson, *in pro. per.*, for Appellant.

J. D. Meredith, and F. P. Tuttle, for Respondents Muir and Chapin.

Lardner & Burns, for Respondent White.

SLOSS, J.—The plaintiff commenced this action to quiet his title to four placer mining claims known as the "Manhattan," the "Weske No. 1," the "Weske No. 2," and the "Weske No. 3" mines, and to a ditch or canal known as the "Dead Horse Mining Ditch," all situate in Placer County. The action was dismissed as to the defendant Hamilton, the other three defendants answering separately. White set up a claim of title to the "Manhattan" mine. Muir and Chapin filed answers, in which each denied the plaintiff's allegation of ownership, and claimed title in himself to an undivided one-half interest in all the property involved in the action. Certain separate and additional defenses were also pleaded by Muir and Chapin.

Upon a trial before the court, sitting without a jury, findings were made to the effect that the plaintiff "is not, and never was, the owner of, or entitled to or in the possession of all, or any, of" the property described in the complaint; that the defendant White "has no right, title, claim, interest, demand, or estate" in or to said "Manhattan" placer mine, or any of the property described in the complaint; that the defendant Muir is the owner of an undivided one-half interest in said "Weske No. 1," "Weske No. 2," and "Weske No. 3," and "Manhattan" mines, and the defendant Chapin the owner of an undivided one-half interest in and to said mines.

The court made no findings on any other of the defenses set up by Muir and Chapin. Appropriate conclusions of law were drawn from the findings, and a judgment was entered whereby it was decreed that Muir and Chapin are the true and lawful owners and entitled to the possession of the four mining claims in question; and that their title thereto be quieted as against the claims of the plaintiff and all persons claiming under him. It was further adjudged that plaintiff was not the owner of or entitled to the possession of the ditch known as the "Dead Horse Mining Ditch." Plaintiff moved for a new trial, which was denied, and he now appeals from the order denying his said motion. The principal contention of the appellant is that the evidence was insufficient to justify the findings of the court that he was not the owner of any of the property described in the complaint, and that the defendants Muir and Chapin were the owners of the four mining claims involved in the action. The titles asserted by the parties to the various pieces of property involved are traced through different channels, and it will be necessary, therefore, to state them under separate heads.

1. The three Weskes. It appeared without dispute that the three claims known as "Weske No. 1," "Weske No. 2," and "Weske No. 3" were originally patented to Adolph Weske, who, in October, 1878, conveyed them to the Weske Consolidated Mining Company, a corporation. The plaintiff offered in evidence the judgment-roll in an action entitled A. Skym et al. *v.* William Muir et al., in the superior court of Placer County. This was an action to foreclose miners' liens upon said "Weske No. 1," "Weske No. 2," and "Weske No. 3" claims. The Weske Consolidated Mining Company was one of the parties defendant in said action, which resulted in the entry of a decree foreclosing said liens. An order of sale was duly issued in said action, and pursuant thereto said three claims were, on June 21, 1897, sold to J. M. Fulweiler and Ben. P. Tabor, who, on June 28, 1898, received the commissioner's deed for the same. On October 11, 1898, Fulweiler and Tabor conveyed said claims to John R. Scupham. Subsequently, E. D. Pereira and others commenced an action in the superior court of Placer County to foreclose certain miners' liens upon all the property involved in this case, including the three Weskes. Among the parties defendant

were George W. Hamilton, John R. Scupham, William Muir, the Weske Consolidated Mining Company, and others. In that action a decree was entered in favor of the plaintiffs as against Scupham, but not against Muir, and an order of sale issued. On September 20, 1902, the sheriff of Placer County executed a certificate of sale of the four claims and the Dead Horse Ditch to A. K. Robinson, the plaintiff herein, and on September 29, 1903, the sheriff's deed of said property was executed to plaintiff and recorded.

Undoubtedly these facts made out a *prima facie* case of title in plaintiff to the three Weskes. The defendants Muir and Chapin, however, offered evidence tending to establish that on or about the twenty-ninth day of November, 1882, the Weske Consolidated Mining Company had executed and delivered a deed conveying the "Weske No. 1," "Weske No. 2," and "Weske No. 3" claims to the defendant Muir. This deed was never recorded, it having been, as was claimed, destroyed by fire shortly after its delivery. Evidence was also produced to the effect that on June 17, 1883, Muir mortgaged the three Weskes to C. F. Morgan and J. W. Huffman; that on August 6, 1883, Morgan and Huffman assigned the mortgage to Samuel Sussman, who thereafter brought an action to foreclose the mortgage, recovering judgment of foreclosure on June 3, 1885. A foreclosure sale was had on August 4, 1885, and Sussman became the purchaser at this sale, and received his deed in due course. On June 4, 1898, (after the foreclosure sale in Skym *v.* Muir to Fulweiler and Tabor,) Sussman deeded the three Weskes to Muir. Muir conveyed a one-half interest in all these properties to Chapin.

The trial court evidently believed this testimony, and so believing it, necessarily reached the conclusion that plaintiff had no title to the three Weskes, but that the title thereof was in Muir and his grantee, Chapin. Plaintiff's claim is derived from the sale in the action of Pereira et al. *v.* Hamilton et al. Among the defendants in that case was John R. Scupham, and it is his interest that is claimed to have passed to the plaintiff by virtue of this sale. But the only interest which Scupham had was acquired by his deed from Fulweiler and Tabor, who were the purchasers at the sale under the foreclosure of the miners' liens in Skym *v.* Muir. In this action of Skym *v.* Muir, Samuel Sussman was not a party, and any

interest which he may have had in the property could, therefore, not have been affected by the judgment in that action or the sale thereunder. But during the entire pendency of that action, and until after the sale therein, Sussman had been the owner of the property. It follows that no title passed to Fulweiler and Tabor by the foreclosure sale, and that none could pass from them to Scupham or to the plaintiff. The evidence does not sustain the contention of plaintiff that Sussman held the property merely as trustee for Muir, who was made a party to the Skym suit. Nor could Muir's interest, derived from Sussman's conveyance in 1898, have been affected by the sale in the Pereira suit, since Muir, although a party to that suit, recovered judgment in his favor.

It is argued that, as Muir's claim of title has its original basis in the unrecorded deed from the Weske Consolidated Mining Company, it cannot prevail as against the claim of plaintiff. There would be much force in this contention if plaintiff occupied the position of a *bona fide* purchaser for value. (*Foorman* v. *Wallace,* 75 Cal. 552, [17 Pac. 680]; *Riley* v. *Martinelli,* 97 Cal. 575, [33 Am. St. Rep. 209, 32 Pac. 579]; *Murphy* v. *Clayton,* 113 Cal. 153, [45 Pac. 267].) But there is ample evidence to sustain the conclusion that the lien claimants suing in Pereira *v.* Hamilton, and the plaintiff, who was acting on their behalf, were at all times fully informed of Muir's claim of title, even if they were not put upon inquiry by his actual possession of the property. (*Security etc. Co.* v. *Willamette etc. Co.,* 99 Cal. 636, [34 Pac. 321].) The purchaser with notice of another's claim cannot take advantage of the fact that the conveyance under which the other claims was not recorded. (Civ. Code, sec. 1217.)

It is suggested also, that, as Muir was shown to be a stockholder of the Weske Consolidated Mining Company, the conveyance from that company to him was void, under the provisions of section 309 of the Civil Code. Assuming that plaintiff is in a position to assail collaterally a transfer which has never been questioned by the corporation, its stockholders, or its creditors, there is nothing in section 309 to prohibit the sale by a corporation, for an adequate consideration, of property owned by it, and such sale may be to a stockholder as well as to a third person. There is evidence here that the transfer in question was the result of such a sale.

It is claimed that the court erred in admitting, over the plaintiff's objection, a certain judgment-roll in an action brought by William Muir against J. R. Scupham. But the appellant failed to incorporate this judgment-roll in his statement on motion for a new trial. We have no knowledge beyond the statements of counsel as to the contents of this roll, and without such knowledge we cannot say that its admission, if erroneous, was prejudicial.

So far as the three Weskes are concerned, we think the findings were fully sustained by the evidence, and that the court committed no error to the prejudice of the appellant.

2. The "Manhattan" mine. The statement on motion for new trial sets forth that, "the evidence is undisputed that in 1898 the title to the 'Manhattan' placer mine stood of record and was in J. M. Fulweiler and B. P. Tabor." Fulweiler and Tabor conveyed said mine to John R. Scupham by deed dated and recorded October 11, 1898. Scupham executed a deed to Muir on July 25, 1902. Meanwhile, on July 14, 1902, the plaintiff in Pereira et al. *v.* Hamilton et al., had obtained a decree foreclosing their liens on this property as against Scupham, and pursuant to this decree the sale to plaintiff, as above stated, was made. A notice of the pendency of this action had been filed with the recorder of Placer County on January 18, 1902. The sale to plaintiff, and the deed executed in pursuance thereof, conveyed to the purchaser all the title which the judgment debtor (Scupham) had at the date of the filing of the *lis pendens.* (Code Civ. Proc., secs. 409, 1908.) At that date the legal title was in Scupham, and it accordingly passed by the execution sale and deed.

The respondents sought to avoid this conclusion by offering evidence to the effect that Scupham, in purchasing the "Manhattan" mine, acted as agent for Muir, and was holding the title in trust for him, and that the lien claimants, before commencing their foreclosure suit, as well as the plaintiff, their attorney, had actual notice of these facts. The evidence was probably sufficient to justify a finding in favor of this theory. But, if this was so, it did not alter the fact that the legal title to the property was in Scupham and that Muir simply had an equity entitling him to a conveyance from Scupham of such legal title. The plaintiff, purchasing with notice of Muir's claim, became the owner of the legal title, subject to

the same equity. The findings were that plaintiff had no title, but that the title was in Muir and his grantee Chapin. These findings were contrary to the evidence. It has long been settled law in this state that an action to quiet title cannot be maintained by the owner of an equitable title against the owner of the legal title. (*Von Drachenfels* v. *Doolittle,* 77 Cal. 295, [19 Pac. 518]; *Harrigan* v. *Mowry,* 84 Cal. 456, [22 Pac. 658, 24 Pac. 48]; *Burris* v. *Adams,* 96 Cal. 667, [31 Pac. 565]; *Tuffree* v. *Polhemus,* 108 Cal. 676, [41 Pac. 806]; *McDonald* v. *McCoy,* 121 Cal. 55, [53 Pac. 421]; *Chase* v. *Cameron,* 133 Cal. 231, [65 Pac. 460]. See, also, *Frost* v. *Spitley,* 121 U. S. 552, [7 Sup. Ct. 1129].) And, similarly, in such action by the owner of the legal title, proof of a mere equity in the defendant will not sustain a finding that such defendant is the owner of the property. (*Reilly* v. *Wright,* 117 Cal. 77, [48 Pac. 970].) We do not intend to suggest that an equitable defense may not be set up in actions to quiet title. But where the defense consists merely of a denial of plaintiff's ownership and the assertion of title in defendant, such defense is not established by proof that the plaintiff is the owner of the legal title, subject to an equity in favor of defendant. It is true that in this case various equitable defenses were interposed by the answers of the defendants Muir and Chapin. No findings were made on these, however, and they cannot therefore be considered Such defenses, in order to be available to the defendants, should have been the subject of favorable findings by the court. Even though we might regard the evidence as sufficient to sustain them, we cannot supply findings on issues as to which the lower court has not found.

It is, perhaps, hardly necessary to add that, if the findings actually made (which are sufficient to support the judgment) were sustained by the evidence, the failure to find upon additional issues, which could not affect the result, would be entirely immaterial. We mention this in answer to the contention of appellant that such failure in itself constitutes prejudicial error.

3. The "Dead Horse Mining Ditch." This stands in much the same situation as the "Manhattan" mine. The plaintiff offered evidence tending to show title in Scupham, and a sale of the same to plaintiff in the Pereira foreclosure suit. The

defendants again rely on proof of the trust relation between Scupham and Muir, but for the reasons stated above, this was insufficient to overthrow plaintiff's claim of title.

A new trial must accordingly be ordered as to the "Manhattan" claim and the "Dead Horse Mining Ditch." We see no reason, however, why such new trial should not be limited to the issues raised as to these properties. Under our practice a party may move for a new trial as to a part of the issues. (*San Diego Land and Town Co.* v. *Neale,* 78 Cal. 63, [20 Pac. 372].) If the motion be for a new trial as to the entire action, the court may grant it in part and deny it in part, leaving its former determination upon a portion of the issues to remain. (*Duff* v. *Duff,* 101 Cal. 1, [35 Pac. 437].) It has also long been settled that upon an appeal from the judgment an appellate court may order a new trial as to a part of the issues, leaving the decision in force as to the remainder. (*Marziou* v. *Pioche,* 10 Cal. 546; *Soule* v. *Dawes,* 14 Cal. 248; *Argenti* v. *San Francisco,* 30 Cal. 463; *Kinsey* v. *Green,* 51 Cal. 379; *Glascock* v. *Ashman,* 52 Cal. 420; *Billings* v. *Everett,* 52 Cal. 661; *Goodlett* v. *St. Elmo Investment Co.,* 94 Cal. 297, [29 Pac. 505]; *Tunis* v. *Lakeport Ass'n,* 98 Cal. 285, [33 Pac. 63].) The reasoning upon which these cases went is equally applicable to an appeal from an order denying a new trial. Where the issues are entirely separate, and a new trial was properly denied as to some, and erroneously as to others, the order should be reversed only so far as may be necessary to correct the error in the order. As we have seen, there was no error in denying a new trial as to the three Weskes, and it would be imposing a useless burden and expense upon the parties to require the issues affecting these claims, which have once been properly adjudicated, to be again reopened for litigation. (See *Emerson* v. *Yosemite etc. Co.,* 149 Cal. 50, [85 Pac. 122].)

The order denying a new trial is reversed so far as it affects the issues raised regarding the "Manhattan" mine and the "Dead Horse Mining Ditch"; in àll other respects it is affirmed. The parties should, if they desire, have leave to amend their pleadings or to file additional pleadings regarding the issues sent back for a new trial.

Shaw, J., and Angellotti, J., concurred.