[L. A. No. 7836.   In Bank.—July 2, 1925.]

WM. H. MOORE, Jr., as Assignee, etc., Plaintiff and Respondent, v. WILLIAM SCHNEIDER et al., Defendants; GEORGE F. METCALFE, as Administrator, etc., Defendant and Appellant; NEWMARKET COMPANY et al., Interveners and Respondents.

[1] FRAUDULENT CONVEYANCES—PERSONS UPON WHOM BINDING.—The grantor in a deed made for the purpose of defrauding, hindering, or delaying his creditors cannot be relieved against its operation. The conveyance as to him is valid and vests the legal title in the grantee; it is good against the grantor, his heirs, executors, administrators, and persons claiming under him, and as to all persons except creditors of the grantor who may question it in a proper proceeding.

[2] ID.—NONSTATUTORY ASSIGNMENT OF DEBTOR'S PROPERTY—EXTENT OF ASSIGNEE'S RIGHTS.—An assignee under a nonstatutory assignment of all the property of a debtor not exempt from execution for the benefit of creditors signing the agreement or consenting thereto acquired no greater right in certain real property, alleged to have been fraudulently conveyed to the debtor's wife, than the debtor had at the time of the assignment. The assignee took only the interest of the assignor in and to the property, and can assert no claim to the property which the assignor might not.

[3] DEBTOR AND CREDITOR—ASSIGNMENT OF DEBTOR'S PROPERTY—SCOPE OF.—An assignment does not carry with it to the trustee the title to property which the assignor has previously transferred in fraud of his creditors, and, in the absence of any statute giving such power, the assignee cannot maintain an action to recover it.

[4] ID.—INSOLVENCY—STATUTORY AND NONSTATUTORY ASSIGNMENTS—HOW ESTATE OF INSOLVENT PASSES.—In the case of an assignee in

<hr/>

1. Right of grantor to relief from transfer in fraud of creditors, note, 15 Am. Dec. 599. See, also, 12 R. C. L. 473.

2. See 2 R. C. L. 709; 3 Cal. Jur. 324.

insolvency the estate of the debtor devolves in trust for the benefit of others than the debtor, that is to say, when a person has been adjudicated an insolvent, and the assignee in insolvency has been appointed, the estate of the insolvent, without any voluntary act of his, passes from him to the assignee. In the case of an assignment for the benefit of creditors, either statutory or nonstatutory, the estate passes as the result of some positive act or agreement on the part of the owner of the property. In the one case, the estate of the insolvent "devolves" upon the assignee by operation of law; in the other, the estate is "granted" by the owner.

[5] ID. — STATUTORY ASSIGNMENT — HOW MADE.—In the case of a statutory assignment, the assignee is authorized to make an assignment of property in trust for the satisfaction of his creditors, which must be made to the sheriff. After the creditors have elected an assignee, the sheriff is required to assign to such elected assignee "all the property assigned to him."

[6] ID.—WHAT PROPERTY STATUTORY ASSIGNEE TAKES.—An assignee under a statutory assignment takes only the property voluntarily conveyed to the sheriff by the assignor, and the effect is the same when an insolvent voluntarily conveys his property to an assignee of his own choosing.

[7] ID.—WHAT PROPERTY NONSTATUTORY ASSIGNEE TAKES.—Under a nonstatutory assignment of all the property of the debtor not exempt from execution for the benefit of creditors signing the agreement or consenting thereto, the assignee has no greater powers than are possessed by an assignee selected in accord with the statutory provisions relating to assignments for the benefit of creditors.

[8] FRAUDULENT CONVEYANCES — WHEN CREDITOR IS DEFRAUDED. — A creditor can avoid the act of his debtor for fraud only when the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer; and he cannot be said to be delayed, hindered, or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn by a fraudulent conveyance; and that right does not exist until he has bound the property, by judgment, or by judgment and execution, as the case may be, and has shown that he is defrauded by the conveyance in consequence of not being able to procure satisfaction of his debt in a due course of law.

[9] ID.—QUIETING TITLE—ACTION BY NONSTATUTORY ASSIGNEE—RIGHT TO MAINTAIN—INTERVENTION BY CREDITORS.—An assignee under a nonstatutory assignment of the property of a debtor for the benefit

8. Exceptions to rule requiring reduction of creditor's claim to judgment before suing to set aside fraudulent conveyance, note, 1 Ann. Cas. 629. See, also, 12 Cal. Jur. 1033.

of creditors signing the agreement or consenting thereto may maintain an action against the wife of the debtor to quiet title to certain real property alleged to have been conveyed to the wife in fraud of creditors, and the creditors have such an interest in the success of the assignee that they are entitled to intervene in the action.

[10] ID.—ACTION BY WIFE OF DEBTOR TO QUIET TITLE—CONSENT JUDGMENT—RES ADJUDICATA.—In an action by an assignee of an insolvent debtor to quiet title to certain real property alleged to have been conveyed to the debtor's wife in fraud of his creditors prior to the assignment, the fact that a decree quieting title to said real property obtained by the wife against her husband may have been a "consent judgment" does not deprive it of its force as *res adjudicata.*

[11] JUDGMENTS—CONSENT—RES ADJUDICATA—IMPEACHMENT.—A judgment by consent in an action in which the court had jurisdiction of the subject matter and of the parties is *res adjudicata,* and conclusive between the parties and those deriving under them, and will bind them and those claiming under them as efficaciously as if it had been entered after a trial of the issues. It may be impeached, like any other judicial record, by evidence of a want of jurisdiction in the court rendering it, by showing collusion between the parties, or by proof of fraud on the part of the party offering the record; but, until that is done, it will bind the parties and those in privity with them.          •

[12] DEEDS—ASSIGNMENT BY INSOLVENT DEBTOR—CONSTRUCTION.—An assignment executed by insolvent debtors for the benefit of creditors, purporting to "grant, bargain, sell, assign and transfer unto" the assignee all the property of the assignors, both real and personal, not exempt from execution, constitutes a "conveyance."

[13] FRAUDULENT CONVEYANCES — QUIETING TITLE — NOTICE — UNRECORDED ASSIGNMENT—JUDGMENTS.—A judgment quieting title to certain real property, rendered in favor of the wife of an insolvent debtor in an action against the latter, is a bar to a subsequent action by an assignee under a nonstatutory assignment of the debtor's property for the benefit of creditors, to quiet title to said real property, where the alleged fraudulent deed to the wife was recorded prior to the nonstatutory assignment, and notice of the pendency of the wife's action to quiet title, which was commenced after the assignment was made, was given at a time when the assignment remained unrecorded, and the wife did not know of the assignment when she commenced her action; and the assignee cannot escape the consequence of his failure to record the assignment in due time on the ground that he had no notice of the action subsequently brought by the wife.

---

11. See 15 R. C. L. 645; 14 Cal. Jur. 877.

[14] ID.—SECTION 1214, CIVIL CODE—CONSTRUCTION.—The context of section 1214 of the Civil Code, which was amended in 1895 by adding thereto the provision that every conveyance of real property is void "as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action," indicates very clearly that the added provision is unrelated to subsequent purchasers, questions of good faith, valuable consideration, or those who have notice.

[15] ID.—ASSIGNMENT FOR BENEFIT OF CREDITORS—TRANSFER.—An assignment of real property for the benefit of creditors is as much subject to the provisions of the code relating to transfers of real property, and as much within the policy of the statute as any other transfer of such property.

[16] ID.—RECORDATION—PURPOSE OF SECTION 1214, CIVIL CODE.—The purpose of section 1214 of the Civil Code, providing that every conveyance of real property is void "as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action," is to prevent fraud through the withholding of notice of transactions affecting titles, to the detriment of subsequent purchasers in good faith and for a valuable consideration, and those who may seek to confirm their claims to real property by judgments affecting the title.

[17] ID.—DEEDS—DELIVERY—ISSUES.—In such action by the assignee to quiet title to the real property in question, whether or not the trial court correctly decided the issue of fact as to the delivery of a deed to said property, executed by the wife in favor of her husband some time prior to the commencement of her action to quiet title, was an immaterial issue in the case, where the husband, the grantee in said deed, was made a party defendant to the action to quiet title brought by the wife, the grantor, and the deed was not placed on record until after the action was instituted and the notice of pendency of the action had been recorded, and the judgment in the wife's quiet title action was that the husband had no interest in the property.

(1) 27 C. J., p. 648, n. 29, p. 649, n. 31.    (2) 5 C. J., p. 1189, n. 55, p. 1190, n. 60.   (3) 5 C. J., p. 1048, n. 22, p. 1184, n. 15, p. 1232, n. 65 New.   (4) 5 C. J., p. 1038, n. 39, 40, 43; 32 C. J., p. 838, n. 78, p. 839, n. 82.   (5) 5 C. J., p. 1197, n. 73.   (6) 5 C. J., p. 1187, n. 39.   (7) 5 C. J., p. 1209, n. 85 New; 27 C. J., p. 723, n. 25.   (8) 27 C. J., p. 470, n. 7 New, p. 506, n. 91.   (9) 5 C. J., p. 1232, n. 65 New, p. 1235, n. 34; 34 C. J., p. 134, n. 42, p. 896, n. 46.   (10) 34 C. J., p. 959, n. 27.   (11) 34 C. J., p. 134, n. 47, 50 New, p. 889, n. 87.   (12) 5 C. J., p. 1119, n. 16 New; 38 C. J., p. 59, n. 34. (13) 18 C. J., p. 247, n. 44; 34 C. J., p. 959, n. 27; 38 C. J., p. 59, n. 33; 39 Cyc., p. 1741, n. 72.   (14) 38 C. J., p. 60, n. 47 New. (15) 5 C. J., p. 1137, n. 46 New.   (16) 38 C. J., p. 60, n. 47 New. (17) 4 C. J., p. 1057, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

Daniel M. Hunsaker and Hunsaker, Britt & Cosgrove for Appellant.

Alfred H. McAdoo for Plaintiff and Respondent and Interveners and Respondents.

WASTE, J.—The defendants, William Schneider and R. R. Miller, as copartners and as individuals, made a nonstatutory assignment of all their property not exempt from execution to the plaintiff, Moore, as assignee, for the benefit of creditors signing the agreement or consenting thereto. Moore subsequently brought this action to obtain a decree declaring that he, as such assignee, is the owner of the equitable title to certain real property, it being alleged that Sophie M. Schneider, wife of the assignor, William Schneider, among others, asserted an adverse claim to that of the assignee. By complaint in intervention, certain of the creditors of Schneider and Miller intervened in the action in support of the plaintiff assignee's contentions. Sophie M. Schneider died, and the defendant Metcalfe, as administrator of her estate, was substituted in her place. As such administrator, Metcalfe, answering, denied the claims of the plaintiff, and alleged that at all times material to the transaction, and at her death, Mrs. Schneider was the owner of the property, and that upon her death her heirs became the owners thereof, subject to the administration of her estate. The trial court found that, some two and a half years before the assignment to plaintiff was made, the defendants William Schneider and Sophie M. Schneider executed and caused to be recorded a deed conveying the real property in question to Charles J. W. Saunders and Elizabeth M. Saunders, his wife; that said transfer and conveyance was wholly without consideration, and was made by the grantors for the purpose of concealing the property from Schneider's creditors, and as part of a scheme participated in by both grantors to defraud; that the transfer was accompanied by an agreement on the part of Saunders and wife with William Schneider to reconvey the property to Schneider, or to

whomsoever he might direct; that thereafter Saunders and wife, by direction of William Schneider, by deed duly recorded, transferred, and conveyed the property to Sophie M. Schneider, without any consideration other than in pursuance of the previous agreement with Schneider to reconvey the property; that Mrs. Schnieder had transferred and conveyed the property to her husband, the defendant William Schneider, and the title stood of record in his name when this action was brought. Judgment was entered for the plaintiff, and the administrator of the estate of Sophie M. Schneider appealed.

Two grounds are advanced by the appellant why the respondent Moore, as assignee of William Schneider, should not recover in this action. The first is that Schneider himself could not maintain an action against Mrs. Schneider to set aside the conveyance by which she obtained title to the property, for it was made at the request of Schneider, and as part of a scheme to defraud his creditors. The contention embodies a correct statement of the law. [1] The grantor in a deed made for the purpose of defrauding, hindering, or delaying his creditors cannot be relieved against its operation. As to him, it is valid. (*Ybarra* v. *Lorenzana,* 53 Cal. 197, 199.) Such a conveyance vests the legal title in the grantee. It is good against the grantor, his heirs, executors, administrators, and persons claiming under him, and as to all persons except creditors of the grantor who may question it in a proper proceeding. (*First Nat. Bank* v. *Eastman,* 144 Cal. 487, 489 [103 Am. St. Rep. 95, 1 Ann. Cas. 626, 77 Pac. 1043]; *Frink* v. *Roe,* 70 Cal. 296, 308 [11 Pac. 820].)

It is next urged by appellant that, as whatever rights the respondent Moore has were acquired by him as assignee under the assignment made by Schneider and Miller, and whatever rights the respondent creditors have are founded on their having signed the agreement of assignment, and consented thereto, if Schneider could not maintain this action, it necessarily follows that the respondents cannot do so. [2] The plaintiff, as the voluntary assignee of Schneider, acquired no greater right in the property than Schneider had at the time of the assignment. He took only the interest of the assignor in and to the property (*First Nat. Bank* v. *Menke,* 128 Cal. 103, 107 [60 Pac. 675]), and can assert no

claim to property which the assignor might not. **[3]** An assignment does not carry with it to the trustee the title to property which the assignor has previously transferred in fraud of his creditors, and, in the absence of any statute giving such power, the assignee cannot maintain an action to recover it. (*Francisco* v. *Aguirre,* 94 Cal. 180, 182 [29 Pac. 495]; *Babcock* v. *Chase,* 111 Cal. 351, 353 [43 Pac. Pac. 1105]; *Southern Cal. H. & M. Co.* v. *Borton,* 46 Cal. App. 524, 529 [189 Pac. 1022].) Respondents endeavor to avoid the effect of this rule by arguing that the respondent Moore is not a mere assignee for the benefit of creditors, representing the assignors only, but that under the assignment in this case he represents and is trustee for the creditors. "The failure to observe the well-defined distinction," they quote from *Ruggles* v. *Cannedy,* 127 Cal. 290, 304 [46 L. R. A. 371, 53 Pac. 911, 916], "between the powers of the assignee in insolvency who thus represents the creditors, and those of an assignee for the benefit of creditors, who is the representative of the assignor, has led to much conflict of authority upon this question." There is, of course, a distinction between an assignee in insolvency and an assignee for the benefit of creditors. It is this: **[4]** In the case of an assignee in insolvency, the estate of the debtor "devolves in trust for the benefit of others than the debtor." That we understand to mean that when a person has been adjudicated an insolvent, and the assignee in insolvency has been appointed, the estate of the insolvent, without any voluntary act of his, passes from him to the assignee. In the case of an assignment for the benefit of creditors, either statutory or nonstatutory, the estate passes as the result of some positive act or agreement on the part of the owner of the property. In the one case, the estate of the insolvent "devolves" upon the assignee by operation of law. In the other, the estate is "granted" ·by the owner. (*First Nat. Bank* v. *Menke, supra.*) **[5]** In the case of a statutory assignment, the assignee is authorized to make an assignment of property in trust for the satisfaction of his creditors, which must be made to the sheriff. (Civ. Code, sec. 3449.) After the creditors have elected an assignee, the sheriff is required to assign to such elected assignee "all the property assigned to him." **[6]** It is therefore evident that the assignee takes only the property voluntarily con-

veyed to the sheriff by the assignor. (*Francisco* v. *Aguirre, supra.*) The effect is the same when an insolvent voluntarily conveys his property to an assignee of his own choosing. [7] We find ourselves unable to agree with the respondents that, under the assignment in this case, the respondent Moore, as assignee, had any greater powers than are possessed by an assignee selected in accord with the statutory provisions relating to assignments for the benefit of creditors. (Civ. Code, secs. 3460 et seq.)

For another, and second, reason, the appellant contends that none of the respondents is in position to maintain this action. He invokes the doctrine, universally held, that a creditor is not in position to attack a transfer for fraud unless he has a specific lien upon the property transferred, or has reduced his claim against the debtor to judgment. (*Sewell* v. *Price*, 164 Cal. 265, 270 [128 Pac. 407].) [8] The creditor can avoid the act of his debtor for fraud only when the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer. (Civ. Code, sec. 3441.) He cannot be said to be delayed, hindered, or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn by a fraudulent conveyance. That right does not exist until he has found the property, by judgment, or by judgment and execution, as the case may be, and has shown that he is defrauded by the conveyance in consequence of not being able to procure satisfaction of his debt in a due course of law. (*Brown* v. *Campbell*, 100 Cal. 635 [38 Am. St. Rep. 314, 35 Pac. 433]; Bump on Fraudulent Conveyances, 2d ed., p. 522.) The respondents concede the general rule to be as stated. Their position is that, as to the action by the plaintiff assignee, the rule has no application because he could not sue for a money judgment, and is not seeking to set aside any conveyance, fraudulent or otherwise, but is merely endeavoring to establish title to real property to be in himself under the provisions of the assignment executed by Schneider to him. The intervening creditors, they admit, cannot recover a money judgment against Schneider, for the reason that, in signing the agreement of assignment, they have expressly released the debtors, and have no right of a direct action against them, or either of them.

[9] If this were an action in the nature of an ordinary creditor's bill brought by all, or any, of the respondents, other than the plaintiff Moore, to subject the property in question to the payment of their demands, the contention of the appellant would raise an effective bar against the maintenance of the action. But that is not the kind of an action that has been brought. Section 738 of the Code of Civil Procedure provides that "an action may be brought by any person against another who claims an estate or interest in real or personal property, adverse to him, for the purpose of determining such adverse claim." We know of no reason why one in the position of the plaintiff, who is not here claiming as a creditor, may not maintain such an action as a quiet title action under the provisions of the code. The right to recover is, of course, dependent upon matters which do not relate to the particular form of the action brought. The other respondents had such an interest in the success of the plaintiff that they were entitled to intervene in the action. (Code Civ. Proc., sec. 387.)

By apt pleading and proof in the court below, the appellant interposed, as a bar to the right of the plaintiff to recover in this action, a judgment rendered in a suit instituted by Sophie M. Schneider against William Schneider, her husband, to quiet title to the real property here in question, and in which cause a decree was entered in her favor. The trial court held the judgment had no force or effect as against the plaintiff and interveners, and was not a bar to the present action. Appellant challenges the correctness of that construction. The findings show that Mrs. Schneider received the deed from Saunders and wife on or about March 8, 1918, and recorded it March 27th. The assignment by Schneider and Miller to Moore, as assignee, was executed April 6th, following. It was not signed by Mrs. Schneider and was never recorded. On May 28, 1918, Mrs. Schneider instituted an action against William Schneider to quiet her title to the property, and filed notice of the pendency of the action in the office of the county recorder of the county in which the property was located. The assignee, Moore, was not made a party to the action, made no appearance therein, and apparently took no notice of its pendency. William Schneider appeared in the action and filed an answer. Mrs. Schneider died, and her administrator,

Metcalfe, the appellant here, was substituted ·as plaintiff in her place. In due course, judgment and decree was entered that Sophie M. Schneider was, at the time of the commencement of the action, and at the time of her death, the owner in fee simple of the property, and that William Schneider had no right, title, interest, or estate therein. The judgment was not appealed from, and became final. It is the contention of appellant that the judgment wiped out all of the claims of the respondents, and is a complete bar to this action by reason of the provision found in section 1214 of the Civil Code that an unrecorded conveyance is void as against any judgment affecting title when due notice of action has been given.

[10] The respondents claim that the decree obtained by Mrs. Schneider was a ''consent judgment,'' and should not be held *res adjudicata* as to the respondent assignee. The contention is not sound. [11] A judgment by consent in an action in which the court had jurisdiction of the subject matter and of the parties is *res adjudicata,* and conclusive between the parties and those deriving under them, and will bind them and those claiming under them as efficaciously as if it had been entered after a trial of the issues. (*McCreery* v. *Fuller,* 63 Cal. 30, 32.) It may be impeached, like any other judicial record, by evidence of a want of jurisdiction in the court rendering it, by showing collusion between the parties, or by proof of fraud on the part of the party offering the record; but, until that is done, it will bind the parties and those in privity with them. (*Partridge* v. *Shepard,* 71 Cal. 470, 475 [12 Pac. 480].)

[12] The assignment executed by Schneider and Miller purported to ''grant, bargain, sell, assign and transfer unto'' the assignee Moore all the property of the assignors, both real and personal, not exempt from execution. It therefore constituted a ''conveyance.'' (Civ. Code, sec. 1215.) [13] Section 1214 of the Civil Code provides that every conveyance of real property, with ˙designated exceptions, ''is void as against any subsequent purchaser . . . of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded.'' Section 1217 of the same code provides that ''an unrecorded instrument is valid as between the parties thereto and those who have notice thereof.'' Respondents contend that Mrs.

Schneider was not a purchaser in good faith and for a consideration, and had actual notice of the execution of the assignment held by respondent Moore. Therefore, they contend that, reading the provisions of the two sections (1214 and 1217, *supra*) together, the judgment in the quiet-title action should not operate as a bar to the claim of the plaintiff in the present suit. If the contentions of respondents as to the facts and the law of the case were both correct, there might be an immediate ending of the controversy. The trial court found the transaction, by which title was vested in Mrs Schneider alone, as one conceived for the purpose of defrauding Schneider's creditors, thereby denying the right of appellant to claim that Mrs. Schneider was a purchaser of the property in good faith. But Mrs. Schneider was not a subsequent purchaser at all. She acquired title before the assignment to Moore was made, and at a time when the latter had no interest in the property. Her position after the assignment was that of a prior purchaser holding title against a subsequent purchaser claiming under an unrecorded conveyance. It does not appear from the record, and there is no finding, that Mrs. Schneider had knowledge of the assignment to Moore before she instituted the suit to quiet title. The finding of the trial court is merely that Sophie M. Schneider, and her legal representative after her death, had notice of the pendency of the present action before trial and judgment in the quiet-title suit. The fact that she appeared in the present action to resist the claims of the assignee based on an unrecorded conveyance, while prosecuting her own action to judgment, does not, in our opinion, make the situation any better for the case of the respondents, for the reason, as we shall presently show, that knowledge and notice subsequently acquired were not sufficient to change the relative situations of the parties existing at the time the *lis pendens* was recorded in the quiet-title action.

[14] Section 1214 of the Civil Code, *supra*, was amended in 1895, by adding thereto the provision that every conveyance of real property is void "as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action." (Stats. 1895, p. 50.) The context indicates very clearly that the added portion, defining the effect of judgments obtained after record of notice of action, is unrelated to subsequent

purchasers, questions of good faith, valuable consideration, or those who have notice. For this reason, it becomes unnecessary to discuss the authorities cited by respondents which hold that section 1214, *supra,* and section 1217, *supra,* should be construed together. (*Slaker* v. *McCormick,* 179 Cal. 387, 388 [177 Pac. 155]; *Robinson* v. *Muir,* 151 Cal. 118, 122 [90 Pac. 521]; *Bell* v. *Pleasant,* 145 Cal. 410, 413 [104 Am. St. Rep. 61, 78 Pac. 957].) They deal with situations which do not arise under the provision of section 1214 applicable to the facts in this case. Cases, such as *Warnock* v. *Harlow,* 96 Cal. 298 [31 Am. St. Rep. 209, 31 Pac. 166], decided before section 1214, *supra,* was amended in 1895, are not in point on the question here under consideration.

The rule that an unrecorded conveyance is void as against a judgment affecting title, unless such conveyance shall have been duly recorded prior to the record of notice of action, which now finds expression in our code (sec. 1214, *supra*), is founded on, but is more drastic than a similar enactment contained in the New York code (Old Code, sec. 132; Code Civ. Proc., sec. 1671), which provides, in part, that "a person whose conveyance or incumbrance is subsequently executed, or subsequently recorded, is bound by all proceedings taken in the action, after the filing of the notice, to the same extent as if he was a party to the action." This provision of the code, it was held, "so modified the rule as to make the action and the result effectual as against subsequent purchasers and incumbrancers, whose conveyances are not recorded at the time of filing the notice of pendency of the action." (*Kursheedt* v. *U. D. S. Institution,* 118 N. Y. 358, 363 [7 L. R. A. 229, 23 N. E. 473, 474].) In such cases the subsequent holder is as completely cut off by the judgment as if he had been made a party to the action. (*People's Trust Co.* v. *Tonkonogy,* 144 App. Div. 333 [128 N. Y. Supp. 1055, 1057].) In another case it was held that the holder of an unrecorded deed is placed in the same position as a grantee after the filing and indexing of the notice of action. (*Bernard* v. *Baldwin,* 106 Misc. Rep. 631 [175 N. Y. Supp. 138, 140].) In other words, his rights are wholly subordinated and subject to whatever equities or claims the judgment in the action shall thereafter charge upon the property. (*Crocker* v. *Lewis,* 144 N. Y. 140, 143 [39 N. E. 1].)

No decision of the courts of this state dealing with the precise question here involved has been called to our attention. Cases cited by appellant, holding that in foreclosure suits the holder of an unrecorded conveyance or lien need not be made a party to such action, and that the judgment therein rendered is as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action, construe section 726 of the Code of Civil Procedure relating solely to actions for the foreclosure of mortgages. However, that provision of the section, the precise provision found in section 1671 of the New York Code of Civil Procedure, and the opinions are helpful as indicating that the rule relating to the effect of judgments affecting title to real property as against unrecorded conveyances is well understood and equally well established.

Respondents argue that the pendency of the action brought by Mrs. Schneider against her husband was "carefully concealed" from the assignee, and appellant ought not therefore to be allowed to plead the judgment in that case as a bar in this action. They have suggested, and the findings disclose, no good reason why the assignee was not made aware of the situation of which they now complain. The deed under which Mrs. Schneider claimed title was placed on record. The filing for record with the recorder of a notice of the pendency of an action is the mode substituted by statute for constructive notice to all the world of the pendency of such action, which arose under the common law, *ipso facto,* upon the institution of the suit. (*Blackburn* v. *Bucksport,* 7 Cal. App. 649, 653 [95 Pac. 668].) Respondents cannot now escape the consequence of the failure of Moore to record the assignment in due time on the ground that he had no notice of an action subsequently brought by Mrs. Schneider. [15] An assignment of real property for the benefit of creditors is as much subject to the provisions of the code relating to transfers of real property, and as much within the policy of the statute as any other transfer of such property. (*Watkins* v. *Wilhoit,* 104 Cal. 395, 399 [38 Pac. 53].)

The particular language of the New York statute, that the holder of an unrecorded title or encumbrance is "bound by the proceedings to the same extent as if he was a party to

the action," has led the courts of that state to suggest that the rule might not have the same application in cases where a plaintiff has actual notice of the unrecorded encumbrance at the time of the commencement of the action. (*Kursheedt* v. *U. D. S. Institution, supra; Lamont* v. *Cheshire,* 65 N. Y. 30.) The California statute has made the rule more stringent in its application than it is in New York, by declaring that a conveyance which is not of record when the *lis pendens* is filed is "void" as against the judgment affecting the title to the property. The provision was added to section 1214 in 1895, long after section 1217, providing that an unrecorded instrument is valid as between the parties and those who have notice thereof, based on an older enactment (Stats. 1850, p. 249), was incorporated in our present code. It was enacted by the legislature, we may assume, to stimulate and bring about the prompt recordation of all conveyances of real property. [16] Its purpose is to prevent fraud through the withholding of notice of transactions affecting titles, to the detriment of subsequent purchasers in good faith and for a valuable consideration, and those who may seek to confirm their claims to real property by judgments affecting the title. It constitutes a most salutary rule. Whether or not it should apply in a case in which a prior grantee is not made a party to the action, 'or in which it appears that a plaintiff has actual knowledge or notice of the unrecorded claim of title at the time of the commencement of the action, we are not prepared to say. Neither situation is presented here. The findings do not support the contention of the respondents that Mrs. Schneider knew of the assignment to respondent Moore when she brought her action to quiet title. There is nothing in the findings to show that she took with notice of his claim. We are satisfied that the contention of the appellant is the correct one, and that the judgment rendered in the quiet-title action is a bar to the present action.

A number of contentions, why the judgment of the lower court should be reversed, are advanced by appellant and answered by the respondents, in addition to those already considered by us. They relate, for the most part, to the findings of the trial court, alleged errors in the admission of evidence, and the form of the judgment made and entered. In view of what has already been said in the opin-

ion, we deem it necessary to notice only one of the questions thus raised. The trial court found that a deed of the property, which is the subject of this litigation, executed by Mrs. Schneider on November 28, 1917, to William Schneider, "was delivered and became effective." The appellant challenges the sufficiency of the evidence to support the finding. It appears from the testimony that Mr. and Mrs. Schneider were not living together. In an effort to reach a compromise agreement concerning their property rights, and in anticipation of that result being accomplished, Mrs. Schneider executed and placed the deed referred to in the hands of the attorney representing her interests at that time, with instructions to deliver it to Mr. Schneider when the parties arrived at a settlement of their troubles. No settlement was reached, and Mrs. Schneider brought the action against her husband to quiet title. Her former counsel was then in New York. When he returned, he ascertained the deed had been removed from his safe, and that it had been filed for record after Mrs. Schneider brought her suit. He testified positively that he did not deliver or authorize delivery of the deed to anybody, and spoke to no one about it. He did not instruct anyone to record the deed. The only other witness to testify concerning the deed was William Schneider, who testified that the deed was never in his possession at any time; he never procured it from Mrs. Schneider's attorney, and did not know how it came to be recorded. That, in substance, is all the testimony on the subject. It is uncontradicted. Appellant contends that the testimony was not inherently incredible or improbable, and should have been held sufficient to warrant a finding that the deed was not delivered, or, if delivered, it did not become effective because delivered in disobedience of the grantor's instructions, and not in accord with the purposes for which it was executed. On the other hand, respondents rely on the recordation of the deed as constituting *prima facie* delivery, which was not overthrown by the evidence. [17] Whether or not the trial court correctly decided the issue of fact as to the delivery of the deed is an immaterial issue in the case. Schneider, the grantee therein, was made a party defendant to the action to quiet title brought by Mrs. Schneider, the grantor. The findings show that the deed was not placed on record until after the action was instituted

and the notice of pendency of the action had been recorded. Schneider then filed an answer in which he claimed the property to be his separate property, and that Mrs. Schneider had no title or interest therein. The judgment was that Schneider had no interest in the property, and he was enjoined from asserting any right or claim thereto. The claim and right of action of the respondent plaintiff are barred by that judgment. Furthermore, the respondent acquired no greater right by the assignment from Schneider than Schneider had. Therefore, the question of purported delivery of the deed is wholly immaterial.

The judgment is reversed.

Myers, C. J., Shenk, J., Lawlor, J., Lennon, J., Seawell, J., and Richards, J., concurred.