[Civ. No. 5506. Third Appellate District.—January 6, 1936.]

LILLIAN RYAN FitzGERALD, Appellant, v. THE TERMINAL DEVELOPMENT COMPANY (a Corporation) et al., Respondents.

128

Treadwell, Laughlin & Treadwell and Rex Hardy for Appellant.

Chapman & Chapman and Ward Chapman for Respondents.

PULLEN, P. J.—Prior to November, 1921, defendant The Terminal Development Company, whose name was then Los Angeles Market Company, a corporation, owned a twenty-year ground lease on certain property in Los Angeles. This corporation was controlled by the Southern Pacific Company, who was represented by Roy C. Seeley in negotiating with the post-office department of the federal government to lease the property for a postoffice site.

Gerald FitzGerald came into the deal, and Seeley and Fitz-Gerald then proceeded to acquire all of the stock of the Los Angeles Market Company, they entering into an agreement reciting that one-half of the stock was owned by Seeley and the other one-half was owned by FitzGerald, although all of the stock except certain qualifying shares stood in the name of FitzGerald. A lease to the government was executed which required that the corporation or FitzGerald and Seeley finance the cost of construction of the postoffice building. The method of financing agreed upon was that bonds should be sold, the California Trust Company being trustee thereof, and that the bonds should be secured by assignment of the lease on the

property, together with certain property belonging to Fitz-Gerald, which consisted of the home and residence of Mr. and Mrs. FitzGerald referred to herein as the Shatto Place residence; 250 shares of stock in the United Terminal Warehouse Company, and also a policy of life insurance on the life of FitzGerald in the sum of $100,000. The Shatto Place property stood in the name of FitzGerald but was in fact community property of FitzGerald and his wife and was subject to a mortgage in the sum of $27,500. FitzGerald discussed with his wife, appellant herein, the matter of joining in a transfer of this property to the company, but she demurred. However, FitzGerald submitted to the company the matter of conveying the Shatto Place property to the trustee for the benefit of the corporation, and on July 12, 1922, the board of directors, five of the seven being present, passed a resolution that the company acquire from FitzGerald the Shatto Place property "upon terms and conditions to be hereinafter set up and determined between the company and FitzGerald."

On July 15, 1922, the following communication was received by Mrs. FitzGerald through the mail:

"Los Angeles, July 15, 1922.

"Mrs. Lillian FitzGerald,

"Los Angeles, California.

"Dear Mrs. FitzGerald:

"In accordance with resolution adopted by the Board of Directors of the Los Angeles Market Company on July 12, 1922, this is to inform you that the Los Angeles Market Company has agreed with Gerald FitzGerald that in consideration of your affixing your signature to a grant deed conveying Lot 15, Block 5, Shatto Place, Los Angeles, to the Los Angeles Market Company, that company hereby agrees to deed and grant said Shatto Place property to you so that it will be your sole property, free and clear of any and all incumbrances whatsoever, as and when the money borrowed by the Los Angeles Market Company for the development and construction of the Arcade Postoffice is paid and for which said Shatto Place property is used as security.

"THE LOS ANGELES MARKET COMPANY;

"By (Signed) GERALD FITZGERALD,

"President,

"By (Signed) L. C. ROEBER,

"Secretary."

Upon the receipt of this letter plaintiff then joined in the execution of a deed, which conveyed the Shatto Place property to the company.

·On August 17, 1922, Mrs. FitzGerald received a deed to the Shatto Place property reconveying the same to her, signed by FitzGerald as president and Roeber as secretary, and attached to it was the seal of the corporation. On September 5, 1922, the company advanced the money to pay off the indebtedness and the mortgage was satisfied of record. On July 28, 1932, the bond issue, which had been issued some ten years prior thereto, was about to mature, and in order to obtain money to meet a balance due thereunder, the company borrowed from the California Bank the sum of $45,000, giving as security various properties, including the Shatto Place, both Mr. and Mrs. FitzGerald joining in this mortgage to the bank. On January 1, 1933, this loan of $45,000 became due, there still remaining a balance unpaid of approximately $12,000. That amount was borrowed from the Pacific Mutual Life Insurance Company on a $100,000 policy on the life of FitzGerald, and . the Shatto Place property was released from the deed of trust. The trust company, however, refused to terminate the trust or to distribute the various properties it had held, without the written consent of the pledgors, including Mr. and Mrs. Fitz-Gerald. They, however, refused or declined to sign the form of release submitted by the trust company, and thereupon the California Trust Company brought an action in interpleader against Mr. and Mrs. FitzGerald and the Terminal Development Company, alleging that it held in its possession the life insurance policy, warehouse stock, the Shatto Place property, the ground lease of the postoffice site, together with certain other property and prayed that the defendants set up their respective rights thereto. Various answers and a cross-complaint were filed setting up the transactions between the parties. However, this matter was never brought to trial as the parties through their respective counsel stipulated for a final decree, dismissing the answers and cross-complaint filed in the action, and provided among themselves for the disposition of the property held by the trust company. In the final decree signed in pursuance to this stipulation, it was adjudged that the Terminal Development Company was the owner of the life insurance policy in the sum of $100,000 issued on the life of FitzGerald, and that FitzGerald was the owner of certain

shares of stock in the United Terminal Warehouse Company. We will refer to this stipulation again later. All reference was omitted in regard to the Shatto Place property for the reason that Mrs. FitzGerald was making claims to the property, free of encumbrance, and action in regard to that dispute was left open for further litigation.

Thereafter and after the death of FitzGerald, Lillian Ryan FitzGerald, the plaintiff and appellant herein, brought this action in the nature of a suit to quiet title in her individual capacity against the Terminal Development Company and Raymond C. Seeley for a judgment that she was the owner in fee simple of the Shatto Place property, free of encumbrance as against those defendants. Seeley disclaimed any interest in the property but the Terminal Development Company filed an answer denying that plaintiff was ever the owner of the property or that there was ever any agreement to reconvey the property to her free of encumbrance, or otherwise, but did admit that FitzGerald had conveyed the property to defendant for the purpose of hypothecating the same as additional security for the bonded indebtedness; that this conveyance was made pursuant to an agreement made with FitzGerald, by virtue of which defendant paid the mortgage of $27,500, which was to be reconveyed to FitzGerald provided it was reimbursed for the amount paid out on the mortgage. By way of cross-complaint defendant set forth a history of the transaction, making Mrs. FitzGerald a party as well as certain judgment lienors, including Hickey Pipe and Supply Company. All cross-defendants defaulted except Mrs. FitzGerald and Hickey Pipe and Supply Company, which latter company filed an answer claiming its judgment superior to the redemption right of the FitzGeralds, but subordinate to defendant's lien, and the findings and decree were in accord with those contentions.

This appeal treats with two physical properties, the Shatto Place property and the policy of life insurance. Turning our attention first to the real property, the crux of the matter appears to be whether or not title vested in Mrs. FitzGerald by the deed of August 17, 1922, either through the conveyance by the corporation or by virtue of the conveyance from FitzGerald to her.

■ It is the contention of defendant that this deed was not executed or delivered in such manner as to be the deed of the corporation, in that it was not delivered and that the offi-

cers executing it were not authorized to do so by resolution of the board of directors. The court in its finding has sustained this claim. The finding is, " . . . and it is true that on or about August 17, 1922, 'there was also delivered to her by her said husband, a reconveyance of said Shatto Place property to plaintiff, and which deed also bore the signature of said Gerald FitzGerald as' president, and one L. C. Roeber, who was then the secretary of defendant, and was purported to have been signed by them in behalf of this defendant and under the corporate seal thereof, but neither the said agreement nor the said deed was ever authorized to be signed by defendant by its Board of Directors or otherwise, and the same was signed and delivered to her as aforesaid without any authorization whatsoever, and neither said agreement nor said deed ever became binding upon this defendant at all''.

Was the conveyance the deed of the corporation? It bore the seal of the corporation which was *prima facie* evidence of the authority of the officers to execute it. It is unnecessary to cite the wealth of authority in support of this statement. In 6A California Jurisprudence, page 268, where many authorities are cited, it is said:

''The seal of a corporation affixed to an instrument is evidence that the writing is a corporate act. The modern and statutory rule is that the seal itself performs no further or greater function than to import *prima facie* verity of the due execution by the corporation of its written obligations, that is, it merely stands as *prima facie* evidence that the contracts made by a corporation are executed by its authority. The rule applies to both foreign and domestic corporations.

'' Applying the foregoing principles, where the seal appears to be affixed to an instrument and the signatures of the proper officers are proved, courts presume that the officers did not exceed their authority and that the instrument was executed by authority of the corporation. It follows that the burden in such cases is shifted upon the adversary party to overcome that presumption by showing want of authority in the officers to execute the instrument as that of the corporation. However, the showing is *prima facie* only and subject to be overthrown by proof of the fact that authority was lacking; but until overcome by other evidence, this *prima facie* showing of due execution is sufficient. The mere fact that the record of the board of directors does not disclose such authority is not

of itself conclusive proof in that regard; and the presumption of authority to affix the seal will not be overcome by the mere fact that there was no vote of the directors on the subject.''

An examination of the reporter's transcript fails to show any evidence to overcome this *prima facie* evidence. There is no evidence that there was no meeting of the board of directors at which the deed was authorized, nor did defendants prove the directors did not know of the execution thereof. The minutes of the corporation were not introduced to prove that there was no resolution authorizing the execution of the deed. L. C. Roeber, secretary and one of the directors, admitted on the witness stand that he knew of the deed and signed the same as secretary of the corporation. He was not asked, however, whether any of the other directors knew of the deed, nor was he asked whether or not the matter was passed at a meeting of the board of directors, nor was he asked whether there was any resolution in the minutes authorizing the execution of the deed. Defendant therefore failing to overcome the *prima facie* evidence that the deed was the act of the corporation, we must accept the deed as a corporate act; also the instrument being found in the possession of plaintiff, a presumption of due delivery arises. (9 Cal. Jur. 185.)

Should we assume, however, that the deed was not that of the corporation, it was nevertheless a sufficient conveyance to convey title from FitzGerald to his wife and title would thereby vest in Mrs. FitzGerald as her sole and separate property.

No showing was made that the records in the office of the county recorder disclosed any conveyance or transfer superior to the deed of August 17, 1922, to plaintiff, and neither have the defendants by any pleading, relied upon the recordation statutes. They are bound by the deed because they neither pleaded nor proved that they were *bona fide* purchasers for value without notice, and here again the burden rests on them to prove such lack of notice if it existed. (*Kenniff* v. *Caulfield*, 140 Cal. 34 [73 Pac. 803]; *Davis* v. *Ward*, 109 Cal. 186, 190 [41 Pac. 1010, 50 Am. St. Rep. 29]; *County Bank* v. *Fox*, 119 Cal. 61, 64 [51 Pac. 11]; *Eversdon* v. *Mayhew*, 65 Cal. 163 [3 Pac. 641]; *Smith* v. *J. R. Newberry Co.*, 21 Cal. App. 432 [131 Pac. 1055].)

Therefore it seems under the evidence here produced, that title to the property in question vested in Mrs. FitzGerald

either by the deed from the corporation or by virtue of the fact that FitzGerald conveyed his interest to the property in question by his execution of the purported corporate deed, and defendant had constructive notice of plaintiff's claim thereto by her.

In September, 1922, the market company paid off the mortgage, which was some two months after the transfer of title to plaintiff. The company in paying off the mortgage did not do so at the request of Mrs. FitzGerald, but upon its own account and for its own benefit, and plaintiff therefore could not be held obligated to reimburse it for this voluntary act.

It is true that defendant attempted to establish the lack of delivery to Mrs. FitzGerald by introducing various subsequent transactions between the corporation and FitzGerald, to which transactions plaintiff was not a party, but in view of the *prima facie* evidence of authority of the officers of the corporation to execute the deed we do not believe that such authority was overcome. We cannot see how FitzGerald could legally create a lien on the property which he had several months previously, either conveyed or caused to be conveyed to plaintiff as her separate estate.

Appellant claims the court erred in refusing to permit testimony of the transaction between FitzGerald, both individually and as president and manager of the corporation, and herself, upon the ground such evidence tended to establish a trust in the property conveyed; also it tended to fix the consideration for the conveyance, and to show delivery, and a conversion of the property from community to separate property. Without discussing this point with greater particularity we believe the testimony was relevant and the court erred in sustaining the objections of the foregoing line of examination, as it was relevant at least to some of the objects mentioned.

Respondents claim that Mrs. FitzGerald, having placed her agent in a position to contract with a third party as if said agent were the owner of the property, is now estopped to question the transaction. No particular pleading presents this defense, but nevertheless the facts themselves do not justify the claim of respondent. FitzGerald as the president and general manager of the corporation, was, in the be-

lief of plaintiff, the owner of all of the stock of the corporation. Prior to joining in the deed to the company she received by mail first, a written assurance in the name of the corporation, signed by its president and secretary that the property would be reconveyed to her as her separate property upon the payment of the bonds, and later was tendered and accepted a deed executed in the name of the corporation by its president and secretary and under its corporate seal. All this was in accordance with the previous understanding that she had had with FitzGerald as to the conveyance to her of the property as her separate property. We fail to see, therefore, wherein plaintiff was holding her agent out any more than the corporation was negligent in permitting its officers to abuse its trust and confidence, if such were the case.

Directing our attention now to the policy of insurance in which the court found that neither FitzGerald nor his estate had any interest. It will be recalled that an interpleader suit which the trust company filed against the Terminal Development Company, Gerald FitzGerald, Lillian Ryan FitzGerald and Roy E. Seeley was filed to have determined to whom it would deliver the property which it held to secure the bond issue which had then been paid. Fitzgerald was served with a copy of summons and complaint on August 5, 1933. On September 12, 1933, Mrs. FitzGerald entered an appearance personally signed by her wherein she acknowledged service of summons and complaint and agreed that she would file her answer on or before a certain date. It therefore is apparent that the court acquired jurisdiction of both Mr. and Mrs. FitzGerald. The record also shows that defendant Terminal Development Company filed an answer in which it set up ownership or right of possession of all documents, including the policy of insurance. This answer was served upon certain attorneys who accepted service as attorneys for defendant FitzGerald, and later a second attorney appeared for both Mr. and Mrs. FitzGerald.

Thereafter it was stipulated that the answer of defendant herein should be withdrawn and that a final decree be made and entered authorizing all of the documents be delivered to Terminal Development Company, and in accordance therewith final judgment was entered October 24, 1933. It is apparent, therefore, that the ownership and right of possession of the

insurance policy involved here was a part of the subject-matter of the cause of action described in the complaint and that that issue was adjudicated.

A consent judgment is just as conclusive as to these matters at issue and determined by it as a judgment rendered after trial. (13 Cal. Jur. 133; *City of Oakland* v. *Oakland Water Front Co.,* 162 Cal. 675 [124 Pac. 251]; *Moore* v. *Schneider,* 196 Cal. 380 [238 Pac. 81].)

An examination of the record also discloses that aside from the legal issue the court was justified from the facts in finding as it did as to the insurance policy. The original application for the policy designated as beneficiary the Los Angeles Trust and Savings Bank as trustee. That bank being trustee under defendants' trust to secure its bond issue, all the premiums amounting to more than $2,700 a year were agreed to be paid and were paid by defendant. In December, 1930, FitzGerald gave to Seeley an option to purchase his one-half of the stock in the corporation wherein it was provided that "upon payment by FitzGerald to the Terminal Development Company of a sum equal to the cash surrender value of that policy, he could take over and receive the benefit of the $100,000 life insurance policy."

It appears that in February, 1933, FitzGerald applied to the Pacific Mutual Life Insurance Company for a policy of insurance upon his life for $50,000 for business purposes, and at that time inquired whether or not defendants had kept up the premiums on the $100,000 policy because if they had not he wanted to take up the policy and get it back.

We believe the finding of the trial court as to the ownership of the policy of insurance is therefore amply supported both by the admissions, by the stipulations and by the evidence of the facts themselves, and the judgment in the interpleader suit.

As to the claim of Hickey Pipe and Supply Company, no brief was presented upon their behalf and it does not appear that any claim was ever presented as required by section 730 of the Probate Code, against the estate of FitzGerald who died November 1, 1933. Inasmuch as the Hickey Pipe and Supply Company could not enforce its judgment otherwise than by the presentation of such claim, and no claim having been presented, they have no standing before the court.

For the reasons given, judgment should be reversed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 5, 1936, and applications by appellant and respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, were denied by the Supreme Court on March 5, 1936, and the following opinion then rendered thereon:

THE COURT.—In denying the petitions for hearing herein we withhold approval from that portion of the decision of the District Court of Appeal of the Third Appellate District, to the effect that the deed here involved, even if ineffective as a corporation instrument, was nevertheless a sufficient conveyance from the president of the corporation, as an individual, to vest title in the grantee named therein.