[Civ. No. 9375. Fourth Dist., Div. One. Mar. 25, 1970.]

TOMMY C. LEA, Plaintiff and Respondent, v.
ROBERT L. SHANK et al., Defendants and Appellants.

## COUNSEL

Harry M. Hunt, John E. Finn and Victor Rosenblatt for Defendants and Appellants.

Albert E. Nasser and Charles R. Weldon for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Defendants Robert L. Shank (Shank) and Don McAtee, Inc. (McAtee) appeal from a judgment entered in favor of plaintiff Tommy C. Lea (Lea) on March 13, 1968, in an action for damages for personal injuries sustained by plaintiff Lea in a collision of the vehicles.

Lea was driving a truck. Eli Doneff (Doneff) was a passenger in the Lea vehicle. A truck owned by McAtee and driven by Shank was proceeding in the opposite direction and collided with the Lea vehicle. Both Lea and Doneff were injured.

The case was submitted to the jury solely on the issues of proximate cause and damages.

The answers of Shank and McAtee alleged contributory negligence on the part of Lea. McAtee's answer denied the truck had been operated by Shank with McAtee's consent; McAtee filed a cross-complaint against Sylvia Bruner (Bruner) for damage to McAtee's truck which alleged the truck had been operated with McAtee's consent; and alleged Bruner's negligence had caused McAtee's truck to collide with Lea's truck.

The parties appeared for trial of the present action on March 6, 1968. Lea was represented by Charles Weldon; also present was Albert E. Nasser,

an attorney of record for Lea. Shank and McAtee were represented by J. E. Finn; Bruner was represented by Robert V. Keller.

Shank and McAtee moved for a continuance to obtain a neurological examination of Lea. Mr. Finn represented he had first learned on March 4 that a neurologist would testify as a witness for Lea. Upon questioning by the court Mr. Finn stated he could give no date for such an examination, although he had called the offices of two neurologists on March 5, and did not know how soon he could get a neurologist to make an examination and be available as a witness.

There was extensive discussion among court and counsel on all sides as to whether Mr. Finn might have been lulled into a belief that Lea claimed no neurological symptoms.

The motion for continuance was denied.

Next, Mr. Weldon and Mr. Keller asserted an estoppel against Shank and McAtee to deny that Shank was negligent in the operation of the McAtee truck, based upon the results of an earlier action in the Superior Court of Los Angeles County brought by Doneff (Doneff action) against Shank and Bruner which was tried during the month of February 1968.

The court was asked to rule that the issue of Shank's negligence had been adjudicated against him and that it had been adjudicated that Bruner had not been negligent. In support of that motion there were presented and received in evidence certified copies of (1) a judgment on verdict dated February 9, 1968, in an action entitled "Eli Doneff vs. Robert Lee Shank et al," "that Eli Doneff take nothing by reason of his complaint and that defendant Sylvia Bruner have and recover from said plaintiff Eli Doneff costs and disbursements"; the judgment recited the jury's negative answers to an interrogatory as to Bruner's negligence; (2) minutes of the court for February 9, 1968, in an action entitled "Eli Doneff vs. Robert Lee Shank, et al," which show that McAtee also was a defendant therein, and which recite that the jury had returned answers to interrogatories as follows:

"Interrogatory #1. Was Robert Lee Shank negligent? Yes.

"Interrogatory #2. Was the negligence of Robert Lee Shank a proximate cause of the collition? Yes.

"Interrogatory #3. Was Sylvia Bruner Shapley negligent? No.

"Interrogatory #4. Was the negligence of Sylvia Bruner Shapley a proximate cause of the collision? No.

"Warren L. Carroll, Jury Foreman. February 9, 1968.";

further that the answers to #1 and #2 were unanimous; that two jurors had voted to find Bruner negligent and that her negligence was a proximate cause of the collision; (3) minutes in the same action for February 14, 1968, reciting the presence of counsel for Shank, McAtee and Doneff and their representation the case had been settled.

The minutes show that Mr. Finn was attorney for Shank and McAtee in the Doneff action; that Mr. Weldon represented Doneff and Mr. Keller represented Bruner.

In the discussions in chambers various statements were made by counsel with reference to the proceedings in the Doneff action. Mr. Finn mentioned, "Monday after the trial, the morning we settled"; "we settled that case before the doctor appeared on the stand"; "it's true that we did have the mistaken impression there was res judicata, and that was shared by Mr. Nasser, Mr. Keller and myself."

Among the statements made by Mr. Nasser were these: "Going back to the settlement conferences held in this case, I must state that at no time did serious settlement conferences enter into it, for the simple reason the defendants were waiting until liability could be established between the defendants, so we never really had a settlement conference per se."

Mr. Keller used this language: ". . . I have been led to believe since the verdict, that no one was going to proceed against my client. We received by mail from Mr. Nasser a dismissal with instructions not to file it until we received a written notification thereof. . . . I have been led to believe this ever since we received a verdict when the issue of liability, I thought, as far as the defendants, was once and forever decided, but the issues on liability in this particular case are exactly the same.

"The parties are in the same vehicle, there never has been contention of contributory negligence on anybody's part. We just decided—as a matter of fact, we decided in chambers to bifurcate the case, try liability only, to try to find out whether my client was in any way responsible.

"If that was the finding on the part of the jury, then we probably would have settled the case, and Mr. Finn and my principal would have contributed on a fifty-fifty basis."

The court, in first addressing himself to the question of res judicata, used this language: ". . . it being represented to the Court here that there is no issue of contributory negligence, consequently the contention is advanced by counsel for the plaintiff that the issue of liability is res judicata,

which position is not agreed to by counsel for the defendant. . . . not by counsel for defendants Shank and McAtee."

In response to that, Mr. Finn said, "That's correct."

Thereafter no further statements were made by counsel for any party as to what matters had been in issue in the trial of the Doneff action or what issues remained in the case at bench, assuming the issue of Shank's negligence had been conclusively adjudicated.

Although the record on appeal does not show it, it is stated in Lea's brief that a dismissal with prejudice of the Doneff action was filed after the trial of the instant case. It has not been represented that a judgment was entered thereon. The brief refers to the dismissal as "the first final judgment."

The doctrine of collateral estoppel was applied by the trial court based upon its conclusion that the liability of Shank was res judicata as between Doneff and Shank, and that Lea was entitled to assert that adjudication as an estoppel against a denial by Shank of his negligence.

The requirement of mutuality of estoppel has been obviated by the decision in *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892]. In doing so, the court said: "The courts of most jurisdictions have in effect accomplished the same result by recognizing a broad exception to the requirements of mutuality and privity, namely, that they are not necessary where the liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts. [Citations] Typical examples of such derivative liability are master and servant, principal and agent, and indemnitor and indemnitee. Thus, if a plaintiff sues a servant for injuries caused by the servant's alleged negligence within the scope of his employment, a judgment against the plaintiff on the grounds that the servant was not negligent can be pleaded by the master as res judicata if he is subsequently sued by the same plaintiff for the same injuries. Conversely, if the plaintiff first sues the master, a judgment against the plaintiff on the grounds that the servant was not negligent can be pleaded by the servant as res judicata if he is subsequently sued by the plaintiff. . . . The cases justify this exception on the ground that it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries.

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (Pp. 812-813)

The basis of the estoppel is a judgment. There can be no estoppel by verdict or findings of fact until a judgment or decree has been entered upon such verdict or findings. (*Estate of Holbert,* 57 Cal. 257, 258-260; *Birkhofer* v. *Krumm,* 27 Cal.App.2d 513, 543 [81 P.2d 609];[1] *Louie Queriolo Trucking, Inc.* v. *Superior Court,* 252 Cal.App.2d 194, 200 [60 Cal.Rptr. 389].) "A judgment that the plaintiff recover an amount of damages to be assessed later, by the jury or by the court, is not a final judgment." (Rest., Judgments, § 41, p. 161.)

In *Louie Queriolo Trucking, Inc.* v. *Superior Court, supra,* the court went on to say: "We must look, therefore, for a judgment covering all issues, and we find it in the judgment of dismissal with prejudice in the first case, which was accompanied by the payment of a consideration to Douglas Hoeye that constituted a retraxit and was equivalent to a judgment in favor of Hoeye on the merits, as to which his employer could properly take advantage." (P. 200)

In *Louie Queriolo Trucking, Inc.* v. *Superior Court, supra,* 252 Cal. App.2d 194, mandate was sought to compel the trial court to permit the filing of a supplemental complaint setting up an estoppel against a defendant to deny his negligence because of the disposition of an earlier action in which the plaintiff had been the driver of the truck of Queriolo; the defendant in both actions was the same. The issues of negligence and contributory negligence were tried separately, the jury finding against the defendant on those issues. It happened that in error a judgment was entered on that verdict, a motion for new trial made, and an appeal taken resulting in a reversal. Then the action was settled, a dismissal with prejudice filed, and a judgment of dismissal entered thereon.

The Court of Appeal ordered the writ of mandate to issue.

The opinion reads as though the matters thus recited constituted a final adjudication of the liability of the defendant. We doubt that such would have been the opinion of the court if one of the features of the case had not been the jury verdict on the question of liability. That is to say, an action settled after the commencement of a trial for a consideration passing to a plaintiff, accompanied by a dismissal with prejudice, and a judgment entered thereon, would not afford a basis for a claim of res judicata against the defendant to be asserted by a different plaintiff in another action based upon a claim of negligence arising out of the same transaction.

[1]In *Birkhofer* v. *Krumm,* 27 Cal.App.2d 513, 543 [81 P.2d 609], the court said: "While, however, findings, though made between the same parties are not in strictness *res judicata* except as made so in consequence of a judgment entered upon them, they have nevertheless been held to be *prima facie* evidence of the matters found."

There enters at that point the possibility that the action has been compromised upon a denial of liability by the defendant.

Notwithstanding a jury finding of a defendant's negligence in a bifurcated trial in which a judgment was not entered because the trial was halted and the action was then settled, the settlement may yet have been made upon a continued denial of negligence on the part of the defendant at a stage in the proceedings when his right to attack the jury finding had not been exhausted.

It might also be that the defendant accepted the jury's determination and made payment accordingly.

Such a disposition might even have been stipulated to before the jury made its determination.

In *Taylor* v. *Hawkinson,* 47 Cal.2d 893 [306 P.2d 797], the court considered that a judgment clearly based upon a verdict reached by compromising the issue of liability may not be asserted as res judicata on that issue even by a party to that judgment, a new trial having been granted for inadequacy of damages.

The effect of the filing of a dismissal with prejudice in connection with the settlement of litigation is stated in *Bank of America* v. *Department of Mental Hygiene,* 246 Cal.App.2d 578 [54 Cal.Rptr. 899], which held that a probate decree settling an executor's final account which had become final was res judicata as to the propriety of a claim paid by the executor and of the payment made in settlement of the claim. The claim had been compromised after an action thereon had been finally held to be sustainable; and the action was dismissed with prejudice as a result of the compromise.

Concerning that dismissal, the court said: "Somewhat akin to the fact that the decree in Francesco's estate is res judicata in this action, is the situation with reference to the effect of the dismissal with prejudice of the action brought by defendant against plaintiff on its claim. On December 10, 1963, there was filed in that action 'Dismissal With Prejudice' signed by counsel for both parties. This recited in pertinent part 'the above-entitled action having been compromised and settled, the same is hereby dismissed with prejudice.'

"It is well settled that a dismissal with prejudice by consent or stipulation of the parties, after compromise or settlement of the suit where the dismissal is intended to operate as a retraxit and end the litigation, is a bar to a subsequent suit. [Citations] Undoubtedly under this rule it would appear that the litigation is ended not only as to the plaintiff's cause of action but also as to any defense the defendant could have set up; otherwise there would be no 'end to the litigation' which is the object of a dismissal with prejudice." (P. 583.)

We cannot recognize *Louie Queriolo Trucking, Inc.* v. *Superior Court, supra,* 252 Cal.App.2d 194, as a binding precedent that when an action has been compromised after the commencement of a trial in which a finding has been made on only a separated issue by a jury, which itself has no finality, with the compromise resulting in a judgment of dismissal based upon the filing of a dismissal with prejudice, such dismissal or judgment of dismissal is, in a subsequent action by a different plaintiff against the same defendant, ipso facto res judicata as to the issue upon which the jury made a finding.

A concurring opinion in *Louie Queriolo Trucking, Inc.* v. *Superior Court, supra,* contains a statement of policy reasons why a defendant exposed to multiple actions arising out of the same transaction should not be permitted in all actions to have the issue of his liability separately decided, especially if in the action first tried the issue of liability was separately tried. It was said: "If collateral estoppel is not applicable, the bifurcated trial becomes a vehicle by which a defendant can, by using the procedure defendant followed here, litigate identical liability issues a number of times in multiple actions arising from the same transaction." (P. 201.)

It is desirable that litigation be confined within as narrow limits as possible. However, the defendant usually has no choice as to who will make him a target. Nor can the court say that all potential plaintiffs shall unite against him in one trial; a plaintiff, too, may see an advantage in having his action tried separately, even though separate actions brought against the same defendant may be consolidated for trial.

For some reason the Doneff action and the Lea action went to trial in different counties, and in that circumstance consolidation was not feasible.

It is likewise true that the separation of issues for trial may be initiated by a plaintiff for purposes of economy in cost and time; and a finding adverse to the plaintiff will usually terminate the action. "Code of Civil Procedure section 598 was adopted in 1963 as the result of Judicial Council recommendations. Its objective is avoidance of the waste of time and money caused by the unnecessary trial of damage questions in cases where the liability issue is resolved against the plaintiff. (17th Biennial Report, Judicial Council (1959) p. 30; 18th Biennial Report (1961) pp. 56-57; 19th Biennial Report (1963) p. 32; see also Committee on Adm. of Justice Report, 36 State Bar J. p. 416 (1961).)" (*Trickey* v. *Superior Court,* 252 Cal.App.2d 650, 653 [60 Cal.Rptr. 761].)

Section 598, Code of Civil Procedure, provides in part as follows: "In a trial by jury, the court may, when the convenience of witnesses or the ends of justice would be promoted thereby, on motion of a party, . . . make an order . . . that the trial of the issue of liability shall precede the trial of

any other issue in the case, except for special defenses which may be tried first pursuant to Section 597."

In the quoted case of *Trickey* v. *Superior Court,* 252 Cal.App.2d 650 [60 Cal.Rptr. 761], mandate was granted to compel the superior court to exercise its discretion in passing on a defense motion made under section 598.

■ Since the court has discretion to grant such a motion if the ends of justice would be served, it might properly inquire whether there were other pending actions involving the same issue of liability, and if so what would be the attitude of the defendant as to the effect in those actions of a jury finding of liability against him. In such a situation, if no abuse of discretion would result in the denial of a defense motion to bifurcate the trial, it would be possible to grant such a motion upon the condition that defendant stipulate to accept as binding in such other actions the jury's determination of defendant's liability, if after the return of such a verdict the case should be settled instead of there being a trial of the other issues.

It cannot be said that a jury's finding in favor of the plaintiff on a single issue is a finding necessary to a judgment of dismissal. Such a judgment in form wipes out the plaintiff's cause of action and nullifies whatever may have occurred during the trial. ■ "[A] dismissal with prejudice operates as a judgment in favor of the party dismissed." (*McDonald* v. *Severy,* 6 Cal.2d 629, 631 [59 P.2d 98].) A verdict on partial issues does not enter into such a judgment and does not support it. ■ While in most cases such a judgment based upon a written dismissal by the plaintiff may be the result of a settlement between the parties, it would be necessary in each instance to go into the circumstances to see whether there had been a compromise on the question of liability. Such a judgment has not the same effect as a stipulated judgment in favor of the plaintiff for the amount of the agreed settlement. ■ "A judgment by consent in an action in which the court had jurisdiction of the subject matter and of the parties is *res adjudicata,* and conclusive between the parties and those deriving under them, and will bind them and those claiming under them as efficaciously as if it had been entered after a trial of the issues. (*McCreery* v. *Fuller,* 63 Cal. 30, 32.)" (*Moore* v. *Schneider,* 196 Cal. 380, 389 [238 P. 81].) (See also *Church* v. *Church,* 40 Cal.App.2d 701, 705 [105 P.2d 643]; *FitzGerald* v. *Terminal Dev. Co.,* 11 Cal.App.2d 126, 136 [53 P.2d 177, 55 P.2d 194].) ■ While the dismissal with prejudice given for a consideration amounts to a retraxit as between the parties, it is impossible to see why it should on the face of it give to a stranger to the action the right to assert a collateral estoppel against the same defendant in another action.

In *Taylor* v. *Hawkinson, supra,* 47 Cal.2d 893 [306 P.2d 797], the

plaintiff recovered a judgment on verdict for damages and sought and obtained a new trial because of the inadequacy of the award. The trial court found the verdict to have been a compromise verdict, and that the retrial should be on all issues. The Supreme Court sustained the ruling that the first verdict was not res judicata as to defendant's liability, saying: "There is ample evidence to support the trial court's implied finding that the verdicts following the first trial were compromise verdicts . . . Regardless of the effectiveness of such a compromise in extinguishing the causes of action or in settling the rights directly involved therein (see *Partridge* v. *Shepard,* 71 Cal. 470, 475 [12 P. 480]; *Moore* v. *Schneider,* 196 Cal. 380, 389 [238 P. 81]; *FitzGerald* v. *Terminal Dev. Co.,* 11 Cal. App.2d 126, 135-136 [53 P.2d 177, 55 P.2d 194]), it does not constitute such a determination of the issues involved as to render them res judicata where distinct rights are sought to be litigated in a separate cause of action. [Citations] To hold otherwise would tend to defeat rather than to promote the objective of preventing vexatious litigation with its attendant expense both to the parties and the public. Defendant did not have his day in court during the first trial on the issue of liability, and plaintiff can now justify making that judgment binding upon him in her action only on the ground that he had an opportunity to attack it. Had he done so, more rather than less litigation would have ensued, and plaintiff would have gained nothing." (Pp. 896-897) To the same effect is *Leipert* v. *Honold,* 39 Cal.2d 462, 470 [247 P.2d 324, 29 A.L.R.2d 1185].

In *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762 [327 P.2d 111], the court dealt with the question whether a final judgment was res judicata as to certain issues in the following circumstances: The plaintiff joined with his son in an action against the driver of a car with which a car driven by the plaintiff in which his son was riding collided. The son recovered a judgment on verdict; the verdict went against the father who was granted a new trial on all issues. The ruling of the trial court that the judgment in favor of the son was not conclusive as to defendant's negligence was affirmed. The court said, at page 767: "Unquestionably the negligence of defendant Caldwell which caused or contributed to James Nevarov's injuries was identical with the negligence which his parents assert against defendant. In James' case it was not complicated by any claim of contributory negligence on his part and would fasten liability upon defendant though it operated only as a contributing proximate cause concurring with negligence upon the part of James' father, the appellant herein. With reference to the parents, however, defendant's negligence must have been the sole proximate cause of their injuries or defendant cannot be held liable. Thus his negligence takes on a different aspect when viewed by a jury in reference to the respective claims of James and his parents. And whether it would be fair to apply the Bernhard doctrine in the parents' case becomes a serious question."

The record on appeal is ambiguous as to whether the defense of contributory negligence pleaded by Shank and McAtee had been withdrawn. Certainly it had not been formally withdrawn.

The mention by Mr. Keller that there was no issue of contributory negligence might be taken to refer to the Doneff action, or to the fact that no such issue was raised by his own client in the present action.

The court's statement that it was represented to him there was no issue of contributory negligence might be taken to refer to Mr. Keller's statement and the judge's interpretation of it. The judge ended his statement to say that the position stated was not agreed to by counsel for Shank and McAtee, to which that counsel responded, "That's correct."

That is an unsatisfactory record upon which to say the defense of contributory negligence had been withdrawn or waived. The response of counsel for Shank and McAtee might have been intended to express disagreement with the representation that there was no issue of contributory negligence within the more extensive disagreement that "the issue of liability is res judicata."[2]

Shank and McAtee in their brief on appeal do not directly mention contributory negligence and do not assert it was still in issue. They have not filed anything to contradict the statement in the Lea brief, "In neither case was contributory negligence an issue."

The trial court in the Lea action instructed the jury that the plaintiff had the burden of proof as to the issues of proximate cause and damages; a requested instruction that defendant admitted liability was withdrawn; the record does not show a request that the jury be instructed on the issue of contributory negligence.

Those matters and the statements made by counsel in the discussions with the court give some indication that in the Doneff action the attorneys there who represent the parties in the Lea action had acted upon the assumption the jury's determination of liability in the Doneff action was to be in some manner conclusive. It is clear, however, that had the jury found against Doneff on the question of liability, Lea's cause of action would not have been affected thereby. If under some theory the statements and conduct of counsel for Shank in the Doneff action could establish an estoppel against his clients in the Lea action, the record does not support such a theory.

---

[2]See *Stow* v. *Superior Court*, 178 Cal. 140, 142-143 [172 P. 598]; *Morrell* v. *Caldow*, 99 Cal.App. 159 [278 P. 247]; *Back* v. *Farnsworth*, 25 Cal.App.2d 212 [77 P.2d 295].

The matters in the record do not show that the settlement in the Doneff action was based upon an acceptance by Shank of the jury's finding of liability in that action.

The record does not show the existence of all the three criteria postulated in *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 813. There was not a final judgment on the merits.

We do not say that such a final judgment on the merits in the Doneff action would not have been available to Lea. While many authorities have taken such a position (see cases collected in 133 A.L.R. 185, 23 A.L.R.2d 717; 50 C.J.S. 280, § 757[3]), the cited case *Louie Queriolo Trucking, Inc.* v. *Superior Court, supra,* 252 Cal.App.2d 194, assumes that the claim of estoppel is available to the plaintiff in the second action.

It is unnecessary in this appeal to decide that question.

■ Whether or not the defense of contributory negligence was withdrawn in the present action, which we do not pass upon, the jury's findings on the limited issues in the Doneff action were not res judicata as to Shank's negligence in the Lea action. The settlement of the action following the return of the special verdicts did not serve to make those verdicts binding adjudications available to Lea in his action; nor did the filing of the dismissal with prejudice have that effect, even if it could be said that the verdicts survived the action in which they had been returned.[4]

In the matter of the alleged negligence of Bruner, the judgment on verdict in her favor in the earlier trial was clearly a final adjudication if not attacked successfully on motion for new trial or on appeal, which might be asserted by her as a defense in the action brought against her by Lea. In any event, Lea's action against her has been dismissed. Whether she could assert the judgment as binding upon McAtee on his cross-complaint is a different question since McAtee's defense of the Doneff action did not necessarily require, so far as the record shows, any proof on his part that Bruner was negligent; but, again, that cross-action has been dismissed.

■ The trial court did not abuse its discretion in denying Shank's motion for a continuance for an indefinite time to obtain evidence of an unknown content. (*Johnston* v. *Johnston,* 48 Cal.App.2d 23 [119 P.2d 158]; *Stephens* v. *Aviation Research etc. Corp.,* 243 Cal.App.2d 349, 351 [52 Cal.Rptr. 322].)

---

[3]See also Restatement of the Law of Judgments, illustration 5, section 96, page 479.

[4]"A dismissal with prejudice terminates the action." (*Ensher* v. *Ensher, Alexander & Barsoom,* 187 Cal.App.2d. 407, 411 [9 Cal.Rptr. 732].)

Since no error has been found in the determination of the issue of damages, we may properly consider whether a reversal for a trial only as to the issues bearing upon liability is proper.

The general principle is thus stated in *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 801 [197 P.2d 713]: "The appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial. [Citation.] Whether it can or not depends upon the circumstances of each case."

We are of opinion a retrial on the question of liability only would not be proper in a case where a general verdict for damages covered all issues including those bearing on liability.

Such was not the case here. The issue of damages was tried alone. Separate trials of the issues of liability and damage are permitted. (Code Civ. Proc., § 598.) It is easy to conceive of a situation where issues have been separately tried under said section, and the verdict as to liability was the result of reversible error while the verdict fixing damages was free of error. In such a case it would be unreasonable to have a retrial of both issues, even though in ordinary circumstances trial of the issue of liability properly precedes the trial of the issue of damages.

The proceedings in the court below were not had under Code of Civil Procedure, section 598, but the failure to have the issue of liability tried produced the same result as a verdict of liability erroneously arrived at in a bifurcated trial.

The possibility that the verdict on damages may have been the result of compromising the issue of liability does not exist. Shank and McAtee do not have a right to a retrial of all issues solely in the hope that should a verdict for damages again be awarded against them it might represent such a compromise.

There is appellate precedent for the retrial of a single issue unestablished in the original trial while allowing the amount of damages originally awarded to stand. (*Gilmore* v. *Caswell,* 65 Cal.App. 299, 306 [224 P. 249]; see also *Lobree* v. *L. E. White Lbr. Co.,* 53 Cal.App. 85, 93 [199 P. 821].)

The judgment is reversed with directions to the trial court to try any and all issues necessary to determine the question of liability of Shank and McAtee; and if such trial determines either or both to be liable then to

enter judgment in favor of Lea against the defendant or defendants found liable in the sum of $10,000, to bear interest from the date of said entry; otherwise, to enter judgment in favor of the defendant or defendants found not liable.

Coughlin, Acting P. J., and Ault, J., concurred.

A petition for a rehearing was denied April 23, 1970.