[Civ. No. 22310. Third Dist. May 16, 1984.]

MIRKO ANTON MILICEVICH et al., Plaintiffs and Appellants, v.
SACRAMENTO MEDICAL CENTER,
Defendant and Respondent.

**COUNSEL**

Thomas F. Mortimer, Meyer & Mitchell and Herman C. Meyer for Plaintiffs and Appellants.

Thomas A. Tweedy for Defendant and Respondent.

**OPINION**

**BLEASE, J.**—Plaintiffs Mirko and DeVonna Milicevich, husband and wife, appeal from a summary judgment in favor of defendant Sacramento Medical

Center. (See Code Civ. Proc., § 437c.) Plaintiffs' tort action seeks damages for injuries arising out of a suicide attempt by Mirko. The motion for summary judgment was premised on the theory that satisfaction of a statutory consent judgment (Code Civ. Proc., § 998) by other defendants discharged the liability of the medical center by operation of law.

We hold that satisfaction of a judgment, entered pursuant to Code of Civil Procedure section 998, does not work a discharge of the liability of defendants who are not parties to the agreement.

## FACTS

Plaintiffs sued Sacramento Medical Center, Dr. James Johnson and Kaiser Foundation Health Plan, Inc., on grounds of medical malpractice for injuries arising out of Mirko's suicide attempt. The liability of Sacramento Medical Center is premised on the release of Mirko from hospitalization in a dangerous condition. The liability of Dr. Johnson and his employer, Kaiser, is premised upon the doctor's alleged breach of a duty to treat plaintiff husband two days after the discharge by Sacramento Medical Center.

Dr. Johnson and Kaiser made a statutory offer to compromise the action against them for $10,001 pursuant to section 998. Plaintiffs filed a notice of acceptance. Dr. Johnson and Kaiser repudiated the settlement and made a motion for an order preventing entry of judgment. ██ The motion was denied and the trial court ordered entry of the judgment.[1] Plaintiffs then filed a form "Acknowledgment of Full Satisfaction of Judgment" releasing Dr. Johnson and Kaiser. (See former Code Civ. Proc., § 675; Stats. 1980, ch. 600, § 1.) Sacramento Medical Center successfully moved for summary judgment on the ground the satisfaction discharged it. This appeal followed.

---

[1] We note parenthetically the record does not reflect the statutory consent judgment was entered. This presents a conundrum concerning the effect of an unentered but ostensibly satisfied judgment. (See, e.g., Code Civ. Proc., § 664: "In no case is a judgment effectual for any purpose until entered.") Arguably, if the consent judgment is ineffectual the rationale of the summary judgment is eviscerated. (See Code Civ. Proc., § 877, and discussion, fn. 3, *post.*) However, we will overlook this irregularity and press on to the merits of the appeal as tendered by the parties. Failure to enter judgment pursuant to court order is a recognized ground of entitlement to entry nunc pro tunc. (See, e.g., *Hess* v. *Gross* (1943) 56 Cal.App.2d 529, 531 [133 P.2d 1]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 63, p. 3225.) The blemish would doubtless be cured and the matter returned to us after a purposeless delay. Moreover, plaintiffs, the parties advantaged by reversal on this ground, have had the benefit of the "ineffectual" judgment and should be deemed estopped from attacking it. (Cf. 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §·136 et seq.)

DISCUSSION

I

Section 998,[2] as relevant here, provides that any party to an action may "serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time." If the offer is accepted a judgment encompassing the terms and conditions is entered. Section 998 provides that such a judgment "shall be deemed to be a compromise settlement."

Defendants Johnson and Kaiser satisfied the 998 judgment entered pursuant to their agreement with plaintiffs. Sacramento Medical Center, a nonsettling party, seeks a discharge of its liability by reliance upon the rule that "[a]n injured person is entitled to only one satisfaction of judgment for a single harm, and full payment of a judgment by one tortfeasor discharges

---

[2]Section 998 reads in full:

"(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial.

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant.

"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs.

"(e) Police officers shall be deemed to be expert witnesses for the purposes of this section; plaintiff includes a cross-complainant and defendant includes a cross-defendant. Any judgment entered pursuant to this section shall be deemed to be a compromise settlement.

"(f) The provisions of this chapter shall not apply to an offer which is made by a plaintiff in an eminent domain action.

"(g) The costs for services of expert witnesses for trial under subdivisions (c) and (d) shall not exceed those specified in Section 68092.5 of the Government Code." (Added by Stats. 1971, ch. 1679, § 3 p. 3605, amended by Stats. 1977, ch. 458, § 1, p. 1513.)

all others who may be liable for the same injury."[3] (*Fletcher* v. *California Portland Cement Co.* (1979) 99 Cal.App.3d 97, 99 [159 Cal.Rptr. 915]; see also, e.g., *Tompkins* v. *Clay Street R.R. Co.* (1884) 66 Cal. 163, 166 [4 P. 1165]; *Southern California Edison Co.* v. *Harnischfeger Corp.* (1979) 99 Cal.App.3d 9 [160 Cal.Rptr. 23]; Annot., Payment of, or Proceeding to Collect, Judgment Against One Tortfeasor as Release of Others (1947) 166 A.L.R. 1099; see generally Annot., Voluntary Payment Into Court of Judgment Against One Tortfeasor as Release of Others (1971) 40 A.L.R.3d 1181.)

■ The single satisfaction rule is not based upon the effect of the judgment itself, which, in any event, does not preclude pursuit of joint or concurrent tortfeasors. (See, e.g. *Grundel* v. *Union Iron Works* (1900) 127 Cal. 438 [59 P. 826]; Rest.2d Judgments, § 49, com. a, p. 34.)[4] Rather, the rule in *Fletcher* is "designed to prevent double recovery . . . ." (*Id.*, at p. 99; see also *Butler* v. *Ashworth* (1895) 110 Cal. 614, 618 [43 P. 4].)[5] "[T]his rule is equitable in its nature, and . . . its purpose is to prevent unjust enrichment." (Prosser, *Joint Torts and Several Liability* (1937) 25

---

[3]The court said: "This rule, designed to prevent double recovery and never-ending litigation by dissatisfied claimants, applies whether a single judgment has been obtained against joint or concurrent tortfeasors, whether separate judgments of equivalent or disparate amounts have been obtained against tortfeasors, or whether no other judgment has been obtained against other tortfeasors. (*Watson* v. *McEwen* (1964) 225 Cal.App.2d 771, 774-775 [37 Cal.Rptr. 677]; *Winzler & Kelly* v. *Superior Court* (1975) 48 Cal.App.3d 385, 392-393 [122 Cal.Rptr. 259].)" (*Id.*, at p. 99.)

[4]The restatement comment is: "When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required to present all the evidence and theories of recovery that might be advanced in support of the claim against that obligor, see § 25, except insofar as limitations on the competence of the tribunal or other unusual circumstances may permit him to 'split' his claim or to present it in successive actions, see § 26. If he recovers judgment, his claim is 'merged' in the judgment so that he may not bring another action on the claim against the obligor whom he has sued. See § 18. Correlatively, if judgment is rendered against him, he is barred from bringing a subsequent action against the obligor, see § 19, unless there are present the extenuating circumstances set forth in § 20. But the claim against others who are liable for the same harm is regarded as separate. Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor." (Rest.2d Judgments, § 49, com. a, p. 34.)

[5]In *Fletcher*, a railroad worker was injured when he fell in a hole while performing switching operations. (*Fletcher* v. *California Portland Cement Co., supra*, 99 Cal.App.3d at p. 98.) He recovered a judgment against the railroad in federal court, pursuant to a verdict which determined the damages attributable to the injuries. (*Id.*, at p. 99.) The federal judgment was paid in full. The worker then initiated a tort action in state court against the owner of the property on which he was injured. The property owner tendered two special defenses; (1) the worker was collaterally estopped to relitigate both the issue of damages and the issue of comparative negligence, and (2) the satisfaction of the federal judgment barred further recovery. The *Fletcher* opinion held the satisfaction of the federal judgment discharged the liability of the property owner. (*Id.*, at pp. 99-100.)

Cal.L.Rev. 413, 422.)[6] Whether there is in fact a double recovery cannot be determined unless the damages which measure the *full* recovery for the injury have been litigated on their merits. In *Fletcher* and the authority upon which it relies[7], the judgments were predicated upon litigation which adjudicated the full amount of plaintiff's damages. When the judgment which has been satisfied is predicated upon such an adjudication the logic of discharge is clear. Plaintiff is only entitled to a single recovery of full compensatory damages for a single injury. But this reasoning loses its force if the magnitude of damage has not been established in the antecedent litigation.

With the demise of the doctrine that any release is a retraxit[8], the single satisfaction rule has one creditable basis; when there is a satisfaction of a judgment which is predicated upon actual litigation of the damages for the injury, there arises a collateral estoppel to seek further recovery. The basis for the rule has been succinctly stated in the Restatement Second of Judgments: "The adjudication of the amount of the loss . . . has the effect of

---

[6]This observation is contained in an illuminating discussion in the *Prosser* article from which we take an excerpt, omitting the footnotes:

"*Satisfaction of judgment against one releases all.* The English rule was that there could be but one judgment on a joint tort. Since the act of each tort-feasor was the act of all, there was but one cause of action, which was 'reduced to certainty' or merged in the judgment; and judgment against one, even though unsatisfied, barred any later action against another. But if the defendants had not acted in concert, the tort was not joint, there were two causes of action, and an unsatisfied judgment against one did not prevent a later action against the other.

"At the same time there developed a distinct principle, that the plaintiff was entitled to but one compensation for his loss, and that satisfaction of his claim, even by a stranger to the action, would prevent its further enforcement. It is obvious that this rule is equitable in its nature, and that its purpose is to prevent unjust enrichment. It is equally obvious that it applies not only to joint tort-feasors, but also to concurrent wrongdoers not acting in concert, or even to payments made by parties who have no connection with the tort at all.

"American courts have tended to confuse the two rules. The first has been generally repudiated in the United States; the overwhelming weight of authority is that an unsatisfied judgment against one joint tort-feasor does not bar an action against another. The second has become involved with the muddled concept of 'joint tort-feasors;1' and while there are cases holding that payment by one who is not a joint wrongdoer will extinguish the claim, there are others which refuse to sanction such a rule, and which in effect permit double compensation. The whole problem has been further complicated by the question of releases, which remains to be considered." (*Id.*, 25 Cal.L.Rev. at pp. 421-422.)

[7]Namely, *Watson* v. *McEwen* (1964) 225 Cal.App.2d 771 [37 Cal.Rptr. 677] [satisfaction of judgment where damages fixed after trial extinguishes appeal against alleged joint-tortfeasor]; *Winzler & Kelly* v. *Superior Court* (1975) 48 Cal.App.3d 385 [122 Cal.Rptr. 259] [alleged joint-tortfeasor entitled to writ of prohibition against further prosecution of action after satisfaction of judgment entered on jury verdict of damages for injury]; and 4 Witkin, Summary of California Law (8th ed. 1974) Torts, section 37, page 2335.

[8]At common law, a dismissal of an action for consideration, entered in open court pursuant to a stipulation of the parties, operated as a retraxit to discharge the liability of all joint tortfeasors. (See also fn. 3, *ante.*) In California the doctrine has largely been supplanted by statute. (See, e.g. Code Civ. Proc., § 877, and discussion, fn. 12, *post.*)

establishing the limit of the injured party's entitlement to redress, whoever the obligor may be. This is because the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question. See § 29 [relating to issue preclusion]. Therefore, when a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible claim against any other obligor who is responsible for the same loss." (Rest.2d Judgments, § 50, com. d, p. 43; see also Rest.2d Torts, § 886, com. b.) In this case there has been no adjudication of the amount of damages, which is a precondition to the collateral estoppel.

 A judgment obtained pursuant to section 998 is not predicated upon an adjudication of the amount of damages. The statute provides: "Any judgment entered pursuant to this section shall be deemed to be a compromise settlement." (§ 998, subd. (e) *ante* fn. 2.) "Compromise" connotes mutual concessions; it reflects the settling parties' temporal resolution of the risks of suit as between them. A compromise agreement does not as such constitute an adjudication of either liability or damages. (See *United States* v. *International Bldg. Co.* (1953) 345 U.S. 502 [97 L.Ed. 1182, 73 S.Ct. 807]; 4 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 40, pp. 2705-2706; cf. *Taylor* v. *Hawkinson* (1957) 47 Cal.2d 893, 896 [306 P.2d 797]; *Lea* v. *Shank* (1970) 5 Cal.App.3d 964, 971 [85 Cal.Rptr. 79].) The "language ["compromise settlement"] makes it clear that the element of litigated issues . . . is absent, and that the judgment cannot be used as a collateral estoppel . . . ." (4 Witkin, Cal. Procedure, *supra,* Judgments, § 215, p. 3351; see generally, Annot., Consent Judgment as Res Judicata (1979) 91 A.L.R.3d 1170, 1183, § 6[a].) The judgment, however, *is* conclusive between the settling parties *"in accordance with the terms and conditions stated"* in the section 998 offer which are incorporated in the judgment. (§ 998, subd. (b); italics added.) ██ ██ ██ This makes the section 998 agreement the measure of the effect of the judgment.[9]

---

[9]A judgment entered pursuant to a section 998 settlement is a "stipulated or consent judgment [which], being regarded as a contract between the parties, must be construed as any other contract." (*Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516]; cf. *Folsum* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668 [186 Cal.Rptr. 589, 652 P.2d 437].) The scope of such a judgment is confined to the issues within the stipulation. (*Ibid.*) The "terms and conditions stated" in a section 998 agreement may, of course, embrace the whole of the plaintiff's damages. (See Rest.2d Torts, §§ 885, 886, esp. § 885, com. c, "Thus, if it is the understanding of the parties that the payment by the tortfeasor will be full compensation for the injury suffered and therefore full satisfaction of the claim, there is no longer an enforceable claim against any tortfeasor.") In this case, however, the terms and conditions of the section 998 offer will not bear the inference that the amount of the judgment was intended to reflect the amount of damages to which plaintiffs would be entitled if liability were established.

 Sacramento Medical Center cites *Burton* v. *Gardner Motors, Inc.* (1981) 117 Cal.App.3d 426 [172 Cal.Rptr. 647] as contrary authority. In *Burton* the plaintiff was injured in an automobile collision. She sued the owner, the bailee in possession, and the driver of the other car. The driver was not served and the plaintiff accepted a section 998 offer from the bailee. The section 998 judgment was satisfied and the owner successfully moved for summary judgment on the theory of discharge. The court's reasoning depends heavily upon the Vehicle Code statutes which limit the vicarious liability of the owner of the car in an action against the negligent driver and the owner. In our view, *Burton* should be limited to this unique statutory context.[10] The liability of the discharged defendant was vicarious, i.e., derivative of the liability of the settling party. Case law has often distinguished the fact of subordinate liability for purposes of discharge. (See Annot., Release of, or Covenant Not to Sue, One Primarily Liable for Tort, But Expressly Reserving Rights Against One Secondarily Liable, As Bar to Recovery Against Latter (1983) 24 A.L.R.4th 547.) In this case plaintiffs' theory is one of independent concurrent tortfeasance. Under common law precepts this circumstance gives rise to as many causes of action as there are tortfeasors. (See Prosser, *op. cit. supra,* at p. 413.)

To the extent *Burton* holds a section 998 judgment "fixes" the amount of compensatory damages (*id.,* 117 Cal.App.3d at p. 435) we respectfully part company. The only justification offered for this conclusion is the generalized assertion that a "judgment by stipulation has the same effect as a judgment after a trial." (*Id.,* at p. 431.) The authorities cited do not support the literal application of this rule. In each case cited the effect of the judgment was limited to the parties to the compromise. (See *Avery* v. *Avery* (1970) 10 Cal.App.3d 525 [89 Cal.Rptr. 195]; *Nielsen* v. *Emerson* (1931) 119 Cal.App. 214 [6 P.2d 281]; *Rogers* v. *Springfield Fire etc. Ins. Co.* (1928) 92 Cal.App. 537 [268 P. 679]; *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563].)[11] "It is axiomatic that cases are not au-

---

[10]We imply no view whether the *Burton* holding is correct within this contracted domain. The opinion also hinges on the dubious proposition that satisfaction of a consent judgment between the plaintiff and the bailee bars indemnification between the bailee and the owner. (*Burton, supra,* 117 Cal.App.3d at pp. 432-433.) This conclusion is not compelled by the authorities cited in its support. *Burton* appears at odds with *Kemp* v. *Barnett* (1976) 62 Cal.App.3d 245 [132 Cal.Rptr. 823], despite the attempted distinction in the Burton opinion. Similarly *Burton's* logic is undercut by the holding in *Jenne* v. *Wheeler* (1974) 44 Cal.App.3d Supp. 11 [118 Cal.Rptr. 471].

[11]In *Avery,* an ex-husband stipulated to a California judgment for alimony in gross based on an out-of-state dissolution. He had raised the claim that wife's remarriage wiped out the award. Later he defaulted in payment and sought to relitigate the issue in the guise of a modification of award based on the remarriage. In *Nielsen* the court explicitly notes: "It is clear that the action mentioned was upon the same claim that plaintiff is seeking to enforce in the case at bar." (*Id.,* 119 Cal.App. at p. 218.) In *Rogers* the issue was does a consent judgment bear interest from the date of entry if it is stayed. *Gregory* concerns entry of a

thority for propositions not considered." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)

## II

■ Our conclusion is in keeping with California's strong public policy favoring settlement of civil actions, which is to be found in various statutes. (See, e.g., Code Civ. Proc., §§ 877; 998, subd. (b); Evid. Code, §§ 1152, 1154; *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]; *American Bankers Ins. Co.* v. *Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 736 [159 Cal.Rptr. 70].)[12] This policy is fostered if a section 998 offer of compromise can be accepted without the risk it will result in a discharge of other joint or concurrent tortfeasors. It is consistent with this policy to permit a plaintiff to accept an offer of less than full compensatory damages if liability is less than certain. It precludes rejection of an offer for fear of compromising claims against others. If an offer is rejected on this ground and the marginally liable defendant prevails at trial, the cost sanctions, imposed for failure to accept a section 998 offer, may be inequitable.

The medical center's contrary policy argument is unpersuasive. It implies sanctions will not be available unless the maximum recovered from *any* defendant alleged liable for the injury is less than the prevailing defendant's statutory offer of compromise. This novel multilateral reading of section

nonstatutory consent judgment between parties on speaking motion over objection of the plaintiff. *Gregory* "has been severely criticized." (See *DeGroat* v. *Ingles* (1983) 143 Cal.App.3d 399, 401 [191 Cal.Rptr. 761].) This *inter sese* aspect of application of the maxim is also present in the cases not cited in *Burton*. (See, e.g., *Moore* v. *Schneider* (1925) 196 Cal. 380, 389-390 [238 P. 81].)

[12]The most far-reaching of the statutes is section 877, which reads in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—[¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater."

This provision repudiates the muddled and tortuous common law rule that a release, but not a covenant not to sue, discharges other tortfeasors who may be liable for the same injury. (§ 877, subd. (a); see Comment, *Joint Tortfeasors: Legislative Changes in the Rules Regarding Releases and Contribution* (1958) 9 Hastings L.J. 180.) The common law rule was premised on the notion a release should be given effect as a retraxit (regardless of actual intent) and thereby extinguish the cause of action. (See Prosser, *op. cit. supra*, 25 Cal.L.Rev. at pp. 422-425; Comment, *Joint Tortfeasors supra*, 7 Hastings L.J. at pp. 182-185.) The spirit of this statutory rejection of an artificial retraxit applies with equal vigor to a "release" by acceptance of a satisfaction of a statutory settlement. (See Code Civ. Proc., § 4; compare *Thomas* v. *General Motors Corp.* (1970) 13 Cal.App.3d 81 [91 Cal.Rptr. 301], provision extended beyond its literal terms to apply covenant not to sue post judgment but while matter was on appeal.)

998 is unsupported by authority and is untenable. If a single defendant tenders a reasonable compromise as a section 998 offer, the measure for assessing mandatory sanctions is the judgment viewed bilaterally between that defendant and the plaintiff. (Cf. *Wear* v. *Calderon* (1981) 121 Cal.App.3d 818 [175 Cal.Rptr. 566].) Partial settlement is fostered if the disincentive of a limitation on potential damages by satisfaction and discharge is removed from the settlement equation. (See *Kemp* v. *Barnett* (1976) 62 Cal.App.3d 245 [132 Cal.Rptr. 823].)

For the foregoing reasons, the judgment is reversed.

Regan, Acting P. J., and Carr, J., concurred.