**In re Bruce P. ZELIS, Debtor.**

**George PAPADAKIS; Christina Papadakis, Plaintiffs–Appellees,**

v.

**Bruce P. ZELIS, Defendant–Appellant.**

**No. 94–15073.**

United States Court of Appeals, Ninth Circuit.

Submitted June 15, 1995 *.

Decided Sept. 15, 1995.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Jon R. Vaught, Oakland, CA, for defendant-appellant.

Robert E. White, Susan C. Rushakoff, Law Offices of Robert E. White, San Francisco, CA, for plaintiffs-appellees.

Before: HUG, ALARCON, and TROTT, Circuit Judges.

HUG, Circuit Judge:

Appellant, Bruce Zelis, appeals the decision of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's determination that two sanctions orders against Zelis were nondischargeable debts under 11 U.S.C. § 523(a)(6). For the reasons explained below, we affirm in part and reverse in part.

### STANDARD OF REVIEW

We review *de novo* the bankruptcy court's grant of summary judgment. *In re Bullion Reserve of North America*, 922 F.2d 544, 546 (9th Cir.1991).

### FACTS

In 1974, the Papadakises invested in a partnership with appellant, Zelis, and another partner, Day. In 1979, the Papadakises sued Zelis for wrongful conduct while acting as general partner. In 1986, Zelis and the Papadakises entered into a settlement agreement whereby Zelis stipulated to entry of judgment against him if he breached the agreement. Zelis apparently breached the agreement and the Papadakises sued and obtained a judgment in the stipulated amount. Zelis appealed.

The Papadakises filed a motion to dismiss on December 20, 1990. Zelis responded with a 20-page opposition brief. The California Court of Appeal issued an Order to Show Cause why, given his stipulation to the terms of the judgment against him, it should not sanction Zelis for bringing a frivolous appeal. The court set a February 19 hearing date.

On February 1, 1991, Zelis filed bankruptcy and notified the court that it could not proceed with the sanctions order because of the automatic stay provisions of the Bankruptcy Code. That same day, the Papadakises furnished the court and Zelis with legal authority clearly showing that the automatic stay did not apply in this case. *See O'Brien v. Fischel*, 74 B.R. 546 (D.Haw.1987). On February 19, the court held the hearing. Zelis did not attend. On February 25, Zelis requested an opportunity to file a response to the Order to Show Cause. On February 26, the court granted Zelis' request, stating that "Zelis is hereby granted another ten days from the date of this letter to respond to the *O'Brien* case or any other relevant legal issue prior to the submission of this matter for decision."

Zelis did not respond, and on March 8, 1991, he wrote to the court and conceded its jurisdiction to order sanctions and requested another hearing. The court denied his request and, on May 21, 1991, sanctioned Zelis for bringing a frivolous appeal, stating "[t]his frivolous appeal was clearly brought for the improper purpose of delaying the day when Zelis would have to finally pay over the $120,000 he promised to pay in 1986.... We cannot countenance such a shameless effort to unjustifiably prolong litigation."

In related litigation, the bankruptcy court lifted the automatic stay and allowed the Papadakises' other claims to proceed to trial. The court entered a judgment notwithstanding the verdict in favor of the Papadakises. Zelis appealed, arguing that his motion to disqualify the trial judge had been improperly denied and challenging the court's interloc-

utory order dissolving the partnership. The Papadakises moved to dismiss because neither of these grounds was based on a final appealable order. On July 24, 1992, the California Court of Appeal dismissed Zelis' appeal as frivolous and again imposed sanctions "to deter appellants and others from the frauds they continue to visit upon the court system and their adversaries." The court imposed $20,000 in sanctions against Zelis and Day jointly and severally. Half of this amount was to be paid to the Papadakises and the other half to the court. In the fall of 1992, the Papadakises settled with Day, releasing all claims against him in return for his release of all counterclaims against them and other considerations.

On August 24, 1992, the Papadakises filed a complaint in the bankruptcy court to determine the nondischargeability of the sanctions debts against Zelis under 11 U.S.C. § 523(a)(6). On January 25, 1993, the Papadakises filed a motion for summary judgment on this issue. On March 17, 1993, the bankruptcy court granted the Papadakises' motion, finding that both debts were nondischargeable as a matter of law under section 523(a)(6) because they were debts for willful and malicious injury by Zelis to the Papadakises. The bankruptcy court stated:

> The California Court of Appeal found that Zelis intentionally and wrongfully filed two frivolous Notices of Appeal in bad faith and for abusive litigation tactics; that the Papadakises suffered harm from defendant's actions, including incurring attorneys' fees and costs and suffering delay; and that Zelis's actions were without just cause or excuse.

The bankruptcy court therefore gave collateral estoppel effect to the California Court of Appeal's orders. The bankruptcy court also found that the Papadakises' settlement with Day did not affect Zelis's obligation to pay the second sanction.

On November 29, 1993, the BAP affirmed the bankruptcy court's orders. Zelis now appeals to this court. We have jurisdiction under 28 U.S.C. § 158(d).

## DISCUSSION

### I. *Nondischargeability*

■ Section 523(a) of the Bankruptcy Code provides that a bankruptcy shall not discharge an individual debtor from certain kinds of obligations. 11 U.S.C § 523(a). Subsection (a)(6), in particular, states that a debtor is not entitled to discharge of prepetition debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* We have held that an act is "willful and malicious" when done intentionally and the act necessarily produces harm and is without just cause or excuse. *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986). The act may be "willful and malicious" even absent proof of specific intent to injure. *Id.*

■ In the present case, the BAP and the bankruptcy court gave collateral estoppel effect to the California Court of Appeal's findings and orders regarding sanctions and the characterization of Zelis' conduct. In *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991), the Supreme Court recognized that a creditor who successfully obtained a fraud judgment in state court could invoke collateral estoppel in an action under section 523(a). The same reasoning applies to the present case where the requirements for collateral estoppel have been met, i.e., actual litigation of the issue and a determination in a prior action of those elements of the claim that are the same as the elements required for nondischargeability. *See id.*

■ Zelis argues that to give collateral estoppel effect, there must have been litigation over the merits of whether his conduct was willful and malicious. In this case, the record is clear that the issues were litigated, and that Zelis had the opportunity to fully litigate them. With respect to the May 21, 1991 sanction, the fact that Zelis chose not to appear at various hearings or file opposition briefs after requesting and being granted time in which to do so does not, as Zelis contends, preclude a finding that the issue was litigated. The court received briefing on the issues and held various hearings. In fact, it was Zelis' briefing and filing of frivo-

lous appeals that formed the grounds for the sanctions orders.

■ Likewise, the July 24, 1992 sanction was litigated. The Papadakises alleged in their Motion for Dismissal every ground necessary for the court to conclude that Zelis had intentionally filed another frivolous appeal. The Papadakises specifically requested sanctions for Zelis' conduct. Zelis had an opportunity to respond in his answer to the Papadakises' motion. This is litigation. Thus, to give collateral estoppel effect to the California Court of Appeal's rulings, we need only decide whether the findings of that court are sufficient to establish the elements of nondischargeability under section 523(a)(6) for each of the sanctions.

## A. *The May 21, 1991 Sanctions*

■ The California Court of Appeal found that Zelis had acted intentionally in filing his frivolous appeal of the stipulated judgment. The court ordered sanctions because filing a frivolous appeal necessarily causes harm to the opposing parties by requiring them to incur unnecessary litigation costs and attorneys' fees, and by delaying final resolution of the dispute. Likewise, a court generally orders sanctions only when the party's conduct has been particularly abusive and there is no justification or excuse for the behavior. Thus, the BAP's conclusion that the California Court of Appeal found Zelis' conduct to be willful and malicious is fully supported. The BAP correctly concluded that the sanction is nondischargeable under section 523(a)(6).

## B. *The July 24, 1992 Sanctions*

■ The BAP's conclusion that the July 24, 1992 debt was a pre-petition debt is correct. Zelis converted his bankruptcy to Chapter 7 on May 14, 1992, and the sanctions were ordered thereafter. Claims in bankruptcy arise from the debtor's conduct. *See In re Jensen*, 127 B.R. 27, 32–33 (9th Cir. BAP 1991). Because Zelis filed his appeal on January 31, 1992, and that conduct was the basis for the sanction, the sanction is a pre-petition obligation.

As with the May 21, 1991 sanction, Zelis clearly acted intentionally and his conduct, the filing of another frivolous appeal, was the kind of act that necessarily causes harm. Further, the California Court of Appeal found that the conduct was without justification or excuse, characterizing Zelis' appeal as frivolous and in bad faith. Thus, the California Court of Appeal made the requisite findings to support the BAP's conclusion that Zelis' conduct was willful and malicious and without excuse. The debt was therefore nondischargeable under section 523(a)(6).

Because we conclude that the rulings of the California Court of Appeal are to be given collateral estoppel effect, we need not discuss further the merits of Zelis' conduct.

## II. *Settlement with Day*

■ Zelis argues that because the Papadakises settled with Day regarding the July 24, 1992 sanction order that was imposed jointly and severally on Zelis and Day, Zelis is no longer obligated to pay that debt. The Papadakises argue that Day's release was in consideration of his dropping certain counterclaims and transferring his interest in the partnership to them. They argue that because the terms of the release expressly stated that Zelis' obligations were not to be discharged, Zelis must still pay the sanctions order.

■ As an initial matter, we agree with Zelis that the sanctionable conduct at issue here was tortious in nature. Filing a frivolous appeal is conduct akin to malicious prosecution and abuse of process. It is a well-established principle of tort law in California that satisfaction by one tortfeasor is effective as to all joint and severally liable tortfeasors. *Winzler & Kelly v. Superior Court*, 48 Cal.App.3d 385, 122 Cal.Rptr. 259, 263 (1975); Cal.Code Civ.P. § 875 (West 1980). Thus, the question is whether such satisfaction has occurred.

The BAP agreed with Zelis that the Papadakises were only entitled to one satisfaction of the debt. The BAP concluded, however, that Day did not satisfy his obligation, but was instead released when Day reached a compromise with the Papadakises. We dis-

agree. The settlement encompassed numerous claims between Day and the Papadakises. Consideration was given on both sides of the settlement.

The Papadakises cite *Milicevich v. Sacramento Med. Ctr.,* 155 Cal.App.3d 997, 202 Cal.Rptr. 484 (1984), for the proposition that a settlement and release does not operate as a satisfaction of judgment. That case, however, is not directly on point because it is concerned with compromises made before the issue of damages has been litigated. In California, the legislature made a statutory change to the common law proposition that settlement with one joint tortfeasor precluded recovery against other joint tortfeasors. Under the statute, as long as the settlement is made in good faith and before trial, the complainant may pursue other joint tortfeasors on the claim. *See id.;* Cal.Code Civ.P. § 877 (West Supp.1995). This policy reflects a desire to encourage out of court settlement of claims. Here, the issue of damages has been litigated and finally determined. " 'The adjudication of the amount of the loss ... has the effect of establishing the limit of the injured party's entitlement to redress, whoever the obligor may be.' " *Milicevich,* 202 Cal.Rptr. at 488 (omission in original). " '[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforceable claim against any other obligor who is responsible for the loss.' " *Id.* Thus, the considerations applicable to settlements and compromises made pretrial do not fully apply in this case.

The Papadakises and Day compromised a number of claims in the settlement. Day transferred his interest in the partnership to the Papadakises. The settlement stated that Day was completely released from his obligations to pay the July 24 sanction to the Papadakises. It did note, however, that Day must pay a certain amount of the sanctions owed the court, and that Zelis' obligation was not intended to be affected. The settlement did not specify what proportion of the consideration received from Day was intended to satisfy his release from the sanction obligation to the Papadakises. Thus, the Papadakises have failed to establish that the entire joint and several debt was not satisfied by Day. Without this information it is impossible for this court to conclude what, if any, part of the sanctions award Zelis should pay. Requiring Zelis to pay the sanctions again could constitute an impermissible double recovery for the Papadakises. *See Milicevich,* 202 Cal.Rptr. at 486–87; *Carr v. Cove,* 33 Cal.App.3d 851, 109 Cal.Rptr. 449, 451 (1973). The settlement's explicit exclusion of Zelis is irrelevant. The Papadakises, therefore, have no claim against Zelis for the July 24 sanction, and the BAP's conclusion to the contrary is error.

## CONCLUSION

The sanctions orders meet the requisites for nondischargeability under 11 U.S.C. § 523(a)(6). All elements of nondischargeability were previously litigated in the California Court of Appeal and that court's rulings are entitled to collateral estoppel effect. The BAP, therefore, did not err in granting summary judgment on that issue and the May 21 sanction is therefore nondischargeable. However, Day's post trial settlement of the July 24 sanction order operates to prevent the Papadakises from seeking further recovery of that obligation from Zelis. The judgment of the BAP is accordingly affirmed in part and reversed in part.

**AFFIRMED, in part, and REVERSED, in part.**